LYDIA E. CENTENO ALICEA, demandante y apelante, *v.* ELENA ORTIZ, demandada y apelada.

*Número:* O-76-266      *Resuelto:* 4 de enero de 1977

*Jaime Luciano Jiménez,* abogado del apelante; *José Elías Zayas,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

Este es uno de esos casos de custodia de niños en los cuales el juez—especialmente el de apelación, que no vio ni oyó a los testigos declarar—quisiera tener facultades extraordinarias de clarividencia para saber cuál es la mejor solución posible. Pero resolver debemos, y lo hacemos con los elementos de juicio que Dios y el expediente del caso ponen a nuestra disposición.

En casos de esta naturaleza el derecho positivo es claro [1] y el jurisprudencial conocido. [2] Los hechos como casi siempre, son determinantes. El 5 de junio de 1965 nació el niño Andrés González Centeno ("Andy") producto de relacionales extramaritales de Andrés González Ortiz y Lydia Centeno. A esa fecha Lydia era soltera y tenía 18 años de edad. El padre del niño llevó a Lydia y a Andy a vivir con él a casa de su madre de él, la demandada Elena Ortiz. Cuando Andy tenía 7 meses Lydia regresó a su hogar materno con su hijo. Cuando éste tenía aproximadamente un año, como Lydia trabajaba, la abuela materna cuidó del niño. Posteriormente (no surge la fecha de los autos) Lydia casó con José Antonio Moya. El matrimonio y Andy se fueron a vivir a Nueva

---

[1] Arts. 152 al 166 del Código Civil; 31 L.P.R.A. secs. 591 a 634.

[2] *Marrero Reyes* v. *García Ramírez,* 105 D.P.R. 90, (1976); *Feliciano* v. *Guzmán,* 102 D.P.R. 246 (1974); *Irizarry* v. *Irizarry,* 98 D.P.R. 671 (1970); *N.N.N.* v. *N.N.N.,* 95 D.P.R. 289 (1967); *Hernáiz* v. *González,* 93 D.P.R. 829 (1966).

York, donde el matrimonio tuvo dos hijos más, un niño y una niña.

En 1971, cuando Andy tenía alrededor de 6 años, el matrimonio regresó a Puerto Rico. A mediados de ese año Lydia entregó a Andy a su padre. Lydia declaró que lo entregó temporalmente en lo que se terminaba una construcción que se llevaba a cabo en su casa, porque Andy era alérgico y el polvo del cemento le daba asma. Por su parte, la abuela paterna declaró que Lydia le había llevado el niño porque era muy voluntarioso y no podía con él.

Desde dicho año de 1971 hasta el 1975 Andy vivió con su padre y con su abuela paterna. En junio de este último año el padre de Andy murió en un accidente automovilístico. Desde la muerte de Andrés, el padre de Andy, Lydia trató de recuperar la custodia de su hijo pero sin éxito porque la abuela paterna ha rehusado entregárselo. En vista de ello, Lydia inició esta acción para recobrar la custodia de su hijo.

Se han hecho varias evaluaciones sicológicas de Andy, su madre y su abuela. Los peritos de la demandante, como generalmente ocurre cuando son peritos de parte, favorecen la posición de la demandante, y los de la demandada favorecen la posición de ésta. Los peritos de la demandante concluyen que el hijo debe regresar al lado de su madre, que debe criarse en un hogar normal donde hay padre y madre y que debe criarse junto a sus otros dos hermanitos.

Los peritos de la demandada concluyen que como Andy ha estado durante los últimos cinco años con su abuela y como ahora tiene aproximadamente 11 años de edad, sería perjudicial para el niño arrancarlo del hogar de la abuela y traspasarlo a otro que resultaría para él extraño. Estos últimos peritos declaran que Andy rechaza a su madre y prefiere quedarse con la abuela.

En general, los peritos de ambas partes coinciden en que Andy es un niño normal, de normal inteligencia y salud, aunque en los días del juicio demostraba la natural ansiedad

que esa circunstancia generalmente produce. También la evidencia es incontrovertida en el sentido de que ambas familias, la formada por Lydia, su esposo y sus hijos, y la formada por la abuela y dos tías solteras de Andy, cuentan con facilidades modestas pero adecuadas para mantener y educar a Andy. Ambas familias parecen pertenecer a la clase media baja, económicamente hablando. La madre de Andy es una persona de unos 30 años y su esposo es también persona joven. El matrimonio y sus dos hijos residen en Puerto Nuevo. La abuela tiene 50 y pico años de edad y reside con dos hijas adultas en un apartamento en Bahía, en la Parada 15, en Santurce.

La parte demandada insinuó que la demandante ha demostrado ahora interés en recobrar la custodia del niño porque debido a la muerte accidental del padre de éste esperan ciertos beneficios económicos. No hay prueba de tal cosa. (3)

La ilustrada Sala sentenciadora concluyó que se trata de un niño de unos 11 años de edad que ha pasado los últimos cinco al cuidado de su abuela paterna y que resultaría traumático y perjudicial para él separarlo drásticamente de ese hogar que considera el suyo. Falló a favor de la demandada e hizo ciertas determinaciones sobre los días en que la demandante podrá ver a Andy. No vamos a revocar ese fallo pero creemos pertinente hacer unas expresiones.

■ Esta decisión no es eterna. Como en estos casos el valor que gobierna la decisión es el bienestar del menor, si las circunstancias cambian y si ello se justifica, la decisión puede reexaminarse oportunamente a petición de parte. No vamos a hacerlo livianamente pero tampoco vamos a negarnos *a priori* a hacerlo. Desde luego, la prueba se practicaría en el Tribunal de Primera Instancia y a éste corresponderá fallar en primer lugar.

---

(3) Teniendo la madre la patria potestad del niño es ella la administradora de esos bienes. Art. 154 del Código Civil; 31 L.P.R.A. sec. 611.

■ Como hemos indicado, en estos casos de patria potestad y de custodia de menores es el bienestar de dichos menores el objetivo a lograrse. Mas, ¿quién ha de decidir cuál es o dónde está el bienestar del menor? Hay que tomar con cuidado las preferencias demostradas por los niños pues éstas no siempre conducen a su mayor bienestar presente o futuro. Para dar un solo ejemplo de muchos posibles, con frecuencia un niño de 7 años, o de 12, o hasta de 14 preferirá quedarse en casa o en la calle jugando en vez de ir a la escuela. Esa preferencia no constituiría un paso hacia su bienestar. Normalmente son los padres los que están en mejor posición para guiar a sus hijos. Los padres normalmente quieren a sus hijos pero también sienten la responsabilidad de su educación y de su futuro. Los abuelos, por lo general, son más dados al mimo y a autogratificarse con la compañía del nieto.

■ Como es la madre en primer lugar la que tiene el derecho primario de tener consigo a sus hijos, la decisión de este caso es una de excepción y no la regla. Instamos a las partes a poner de su parte altruísmo y nobleza y a poner el interés del menor por sobre el amor propio y el placer de ellas. Deben avenirse a lograr y mantener entre sí unas relaciones civiles y, si posible, cordiales para la mejor salud mental del niño. Es importante para dicha salud que el niño quiera y respete a sus abuelos pero también a sus padres, en este caso, a su madre. A cada parte le toca fomentar ese cariño y respeto del niño para con *la otra parte*.

En cuanto a los días y horas en que la madre puede tener consigo al niño, esto debe entenderse lo más liberalmente posible. No debe escatimarse el tiempo en que el niño esté con su madre si así lo desea. Estas situaciones no se curan con pleitos ni con órdenes de los tribunales. Se curan con cariño verdadero para con el niño, el cual es el cariño desinteresado; con respeto y tolerancia de una parte para con la otra; con el buen ejemplo; y creando un ambiente familiar de paz y de amor. El recuerdo de un ambiente así es lo mejor que abuela

y madre le pueden dejar a su nieto e hijo. Andando el tiempo el hijo crecerá y es importante que cuando mire hacia atrás con mente de adulto pueda sentir cariño y respeto por ambas mujeres y que no sienta el rencor que le producirá el darse cuenta que se le privó irrazonablemente, siendo niño, de la compañía de sus hermanitos y de su madre. *Confirmada.*

El Juez Presidente Señor Trías Monge concurre en el resultado.