# 95 DTA 206

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL DE SAN JUAN

GLORIA ESTHER PIMENTEL TIRADO EN INTERES DE
LAS MENORES MARIAM Y LINETTE LOPEZ PIMENTEL
Demandante-Recurrida

v.

LUIS FRANCISCO LOPEZ DIAZ
Demandado-Recurrente

Núm. KLCE-95-00406

San Juan, Puerto Rico, a 30 de junio de 1995

Panel integrado por su presidente, Juez Rossy García
y los Jueces Aponte Jiménez y Negroni Cintrón

Aponte Jiménez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Ante nos una contienda que por comprender situaciones complejas y variables requiere y amerita que para su solución enumeremos los principios fundamentales que a nuestro juicio le aplican a los fines de establecer un equilibrio razonable. De un lado el derecho de los padres para tener la custodia de sus hijos que emana de su prerrogativa para mantener la integridad de la familia unido a su interés de que no se le despoje de un derecho protegido sin el debido proceso de ley. Por otro lado, el derecho que tienen los hijos menores a que se les proporcione y proteja su bienestar y seguridad aun a costa de que sus padres biológicos sean privados de su custodia.

Los hechos medulares que generan el dictamen recurrido ocurren como sigue: La demandante-recurrida, Gloria Esther Pimentel Tirado presentó ante el foro de instancia, el 8 de mayo de 1995, una petición jurada la cual denominó sobre *"Habeas Corpus, Custodia, Revocación de Patria Potestad; Visitación; Alimentos"*. Alegó ser tía materna de las menores M y L de apellidos L P de quince (15) y nueve (9) años de edad respectivamente quienes residen con su padre, el demandado-recurrente. A los efectos de privar al padre sumariamente de la custodia de dichas menores, las alegaciones de la petición jurada que presentó ante el foro de instancia van dirigidas y pretenden establecer que las referidas menores están siendo sometidas por su padre a agresiones físicas y verbales lo cual, según se alega en la petición, ocurre cada vez que el demandado-recurrente se entera sobre cualquier comunicación que sostengan sus hijas con familiares maternos de éstas. Igualmente se alega que el demandado-recurrente ha abandonado sus responsabilidades de padre; que su conducta va en menoscabo y desprecio de los valores morales que debe ilustrar a sus hijas; y que como resultado de la situación prevaleciente, la salud de sus hijas se ha deteriorado y continúa deteriorándose. Solicitó del tribunal que se ordene, de forma *ex parte,* que las menores sean puestas bajo su custodia mientras se realizan las investigaciones de rigor y se celebra la vista correspondiente para ventilar en su fondo los méritos de la petición.

Significativamente en la parte del juramento de la petición, la peticionaria-recurrida sostiene que *"todo lo antes expresado [en la petición] es cierto y [le] consta de propio y personal conocimiento, excepto lo que [le] consta por información, lo cual cre[e] de buena fe".* En ningún lugar de la petición o del juramento la peticionaria-recurrida manifiesta, ni tan siquiera infiere, cuáles de los hechos que alega le constan de propio y personal conocimiento ni cuáles por información. Tampoco se alude a cómo llega a su conocimiento aquello que por excepción no le consta de propio y personal conocimiento. A los fines de acreditar

cualesquiera de los extremos, hechos y conclusiones alegadas en la petición, no se acompaña con ella prueba documental de naturaleza alguna. La petición jurada no se diligencia en la persona del demandado-recurrente hasta el 13 de mayo de 1995, cuatro (4) días después de emitirse la primera de las dos (2) órdenes recurridas.

Con ese trasfondo, el foro de instancia dictó la providencia solicitada. Ordenó al demandado-recurrente entregar la custodia de sus dos (2) hijas menores a la demandante-recurrida. Lo citó para una vista a celebrarse nueve (9) días después con el propósito de que mostrara causa por la cual no se *"deba dejar en vigor los remedios provisionales [así] dictaminados mientras se ventila el caso en su fondo".* Aún más, posteriormente dictó una segunda orden a solicitud de la peticionaria-recurrida. Prohibió, *ex parte* también, al demandado-recurrente ver a sus hijas en la escuela a la que asisten. Le ordenó abstenerse de hablarles diz y que para impedir que ejerciera sobre ellas *"influencia indebida".* Las órdenes emitidas fueron redactadas por la representación legal de la peticionaria-recurrida y sometidas mediante proyectos que fueron suscritos por la juez de instancia sin tan siquiera exigir o al menos esperar antes de actuar que los escritos de la peticionaria-recurrida se notificaran al demandado-recurrente. Al así disponer, incidió.

Mediante orden para mostrar causa y en auxilio de nuestra facultad apelativa, a solicitud del demandado-recurrente padre de las mencionadas menores presentada conjuntamente con el recurso que nos ocupa, dejamos sin efecto provisionalmente las dos (2) órdenes recurridas dictadas por el foro de instancia. Concedimos término a la demandante-recurrida para que mostrara causa por la cual no deberíamos revocar las órdenes recurridas y disponer que las menores fueran entregadas al demandado-recurrente hasta la celebración de una vista donde luego de escucharlo se adjudique lo que corresponda. En cumplimiento de lo ordenado la demandante-recurrida compareció inmediatamente. Objetó y se opuso al dictamen nuestro que dispuso y ordenó la entrega de las menores a su padre biológico. Los argumentos en apoyo de su posición, no nos persuaden.

Ante los derechos de una y otra parte en porfía es menester identificarlos y determinar su jerarquía a los fines de armonizarlos y reconciliarlos. Situaciones como las que nos ocupan no podemos despacharlas mediante criterios simplistas. La magnitud de la justicia que amerita la situación y los derechos y valores envueltos requiere la evaluación y aplicación de un análisis objetivo, sereno y cuidadoso basado en los principios precisos y determinantes; no al producto de la improvisación. *Santana Medrano v. Acevedo Osorio,* 116 D.P.R. 298 (1985); *Feliciano v. Guzmán,* 102 D.P.R. 246 (1974).

Los padres biológicos tienen el derecho respecto a sus hijos menores a tenerlos en su compañía, educarlos e instruirlos. Art. 153 del Código Civil, 31 L.P.R.A. Sec. 601. Es legítimo concederle, a base de ese derecho y sin que ello se considere como un criterio absoluto, la premisa de que son los que con más idoneidad pueden ejercer las funciones con miras a lograr el bienestar de sus hijos con quienes conviven conforme los mejores intereses de éstos. Cf., *Marrero Reyes v. García Ramírez,* 105 D.P.R. 90, 105 (1976). Contrario a cuando la controversia gira en torno a cuál de los padres biológicos debe otorgarse la custodia de sus hijos, por ejemplo luego de un divorcio, ciertamente es distinguible cuando esa custodia es solicitada por una tercera parte que no es el padre o madre natural del menor y que no ha convivido con éste regularmente. Reconocemos que cuando se trata de otorgar la custodia al padre o madre natural, el criterio normativo aplicable en ese proceso de determinar a cuál de ellos debe concederse esa custodia es el bienestar y los mejores intereses del menor. *Nudelman v. Ferrer Bolívar,* 107 D.P.R. 495 (1978). Ambos padres se encuentran *"esencialmente en la misma posición". Nudelman, supra,* pág. 509. Cuando la controversia gira alrededor de los padres biológicos, al que se le conceda la custodia de un hijo menor es

aquel que se determina como el más apto para efectivamente servir los mejores intereses de ese menor como requisito cardinal.

Aunque cuando de terceras partes se trata el criterio preeminente al evaluar y analizar controversias sobre custodia de un menor continúa siendo el bienestar y los mejores intereses de éste, sin embargo, el enfoque judicial integral es disímil comparado con el que prevalece cuando los que litigan entre sí por la custodia son los padres biológicos.

La determinación de concederle la custodia a una tercera persona que no comparte el derecho a ejercer la patria potestad que tienen los padres biológicos y por consiguiente el derecho *"primario de tener consigo a sus hijos"* opera en principio como una excepción y no la regla. *Centeno Alicea v. Ortiz,* 105 D.P.R. 523 (1977). Su activación nunca puede ser automática. A pesar de que en esta jurisdicción no se ha querido reconocer una presunción controvertible a favor de los padres biológicos como los más aptos para satisfacer las necesidades afectivas y morales de sus hijos menores como en otras norteamericanas, no obstante, aún así se admite el considerable valor que encierra y abarca ese vínculo biológico, *Marrero Reyes v. García Ramírez,* 105 D.P.R. 90 (1976). Le compete el peso de la prueba al que, no siendo la madre o padre biológico del menor sin lazos psíquicos creados como resultado de una convivencia suficientemente prolongada, intente o persiga privar a los padres biológicos de la custodia de los hijos que con ellos conviven. Lo anterior no sólo se justifica por la condición de promovente del tercero sino también de conformidad con los mencionados criterios. Ante la reconocida complejidad de la situación, unido al interés primordial de velar con celo por el bienestar y mejores intereses de los menores, esa prueba generalmente debe ser clara y convincente. El derecho de los padres biológicos a la custodia de sus hijos unido al bienestar de los menores y el *"considerable valor"* que se le debe asignar al vínculo biológico cuando los menores conviven con sus padres, los coloca en mejor posición y justifica esa preferencia.

A nuestro juicio, las meras alegaciones en una demanda sin especificar cuáles le constan al declarante de propio y personal conocimiento y cuáles no, son insuficientes para concluir que con ello el promovente ha descargado su obligación que le impone ese peso de la prueba. Igualmente resultan insuficientes para privar a un padre biológico de esa custodia sumariamente, aunque sea provisionalmente, sin tan siquiera exigir que se le notifique y brinde oportunidad de escucharle.

La legitimación que se le reconoce a un tercero, que no es madre ni padre biológico, para aspirar a que se le conceda la custodia de un menor que convive con sus padres se justifica si la solicitud se fundamenta en la ineptitud de los padres biológicos para tenerla o en el mal uso del derecho a esa custodia. Cuando ello se pretenda, se debe exigir la presencia de elementos como, por ejemplo y sin que se entienda exhaustivos, el abandono, la frecuente agresión, el abuso sexual, el maltrato, la negligencia en el cumplimiento de sus responsabilidades o la interrupción de la convivencia. Asimismo, debe requerirse con rigurosidad la existencia de un vínculo de orden psíquico de la tercera parte con el menor involucrado que permita colegir que el cambio de custodia no necesitará de ajustes sustanciales en menoscabo del bienestar y los mejores intereses del menor. Para la debida orientación en la evaluación del bienestar y mejores intereses del menor los siguientes factores deben recibir prioridad: la preferencia del menor, su sexo, edad y salud mental, habilidad de las partes para satisfacer las necesidades afectivas, morales y económicas del menor, grado de ajuste en el hogar, la escuela, sus hermanos y otros miembros de la familia y la salud psíquica de todas las partes. *Nudelman, supra, ibid.* pág. 511. En ausencia inicialmente de una determinación sobre la inhabilidad de la madre o padre biológico, una emergencia, la presencia de circunstancias extraordinarias como, entre otras, las antes apuntadas, o de un vínculo psíquico como resultado de una convivencia con la tercera parte suficientemente prolongada, no debe considerarse la posibilidad de conceder la custodia de un menor a una tercera parte que no sean los padres

biológicos con quienes convive. Cf., *Smith v. Organization of Foster Families,* 431 U.S. 816, 862, 863; 97 S Ct 2094, 53 L Ed 2d 14 (1977).

Ciertamente cuando no existen las circunstancias al estilo de las señaladas y los padres biológicos son aptos y están capacitados para mantener la custodia de los hijos menores con quienes conviven, las consideraciones que promueven los mejores intereses y bienestar de un menor resulta a todas luces compatible con el derecho de los padres biológicos a tener la custodia de esos hijos menores. Ambos principios y derechos a la luz de esas premisas no están en controversia y son armonizables. Resulta paradójico e incompatible con los derechos, criterios, valores y principios esbozados, quitarle la custodia de un menor a una madre o padre biológico cuando éstos están aptos para tenerla, han convivido juntos y no existen circunstancias extraordinarias o una emergencia que afecte el bienestar de los menores.

Además de reconocerle a los padres biológicos el *"considerable valor"* que inherentemente conlleva y encierra el vínculo biológico en materia de custodia de hijos menores que conviven con ellos, igualmente se reconoce que ese derecho es uno fundamental de libertad protegido por la cláusula del debido proceso en la Constitución federal. Cf., *Stanley v. Illinois,* 405 U.S. 645; 31 L Ed 2d 551; 92 S. Ct. 1208 (1975). La nuestra, al igual que la federal, comparte y proporciona igual protección para los ciudadanos. Como tal interés individual protegido se exige, como parte fundamental del debido proceso, que antes de privar a los padres biológicos de esa custodia se le notifique sobre la solicitud que promueve y persigue privarlos de ella y se le celebre una vista antes para demostrar su falta de capacidad e ineptitud. *Stanley v. Illinois, supra.* Dicho requisito de notificación y vista previa sólo cede y puede excusarse ante la presencia de circunstancias realmente extraordinarias o emergencias debidamente acreditadas que así lo justifiquen. *Stanley v. Illinois, supra;* Cf., *Connecticut v. Doehr,* 501 U.S.1; 115 L Ed 2d 1; 111 S. Ct. 2105 (1991); *Rivera Rodríguez & Co. v. Stowell Taylor,* **93 JTS 111.**

A los fines antes señalados resulta de rigor destacar las siguientes atinadas expresiones: *"Ningun mecanismo superior ha sido diseñado para llegar a la verdad que la notificación de un caso en su contra a una persona en peligro de sufrir la pérdida de un derecho y la oportunidad de enfrentarse al caso".* (Traducción nuestra.) *Joint Anti-Fascist Refugee Committee v. Mc. Grath,* 341 U.S. 123; 95 L Ed 817 (1951); *Connecticut v. Doehr, supra. "En juego aquí no sólo está la apariencia de que se ha hecho justicia sino desde la perspectiva que considera el [debido] proceso como intrínsicamente significativo, la propia esencia y sustancia de la justicia".* (Traducción nuestra.) Tribe, *American Constitutional Law,* 2d. ed., Foundation Press, 1988, Sect. 10.7, pág. 666. De todo lo anterior resulta evidente que el debidó proceso exige no sólo notificación previa sino también la celebración de una vista que le garantice a todo ciudadano la oportunidad de ser oído antes de privarle de un interés protegido por la Constitución como lo es el derecho de los padres biológicos a tener la custodia de sus hijos menores con quienes conviven. Una vez identificado el derecho protegido por la disposición constitucional que garantiza el debido proceso de ley, como lo es el que nos ocupa, uno de los factores que debe sopesarse para determinar el proceso debido *("what process is due")* consiste en determinar si el riesgo de una determinación errónea en la adjudicación y concesión del remedio que se solicita privaría a la persona del interés protegido aunque sea provisionalmente. *Mitchell, supra.*

Cuando se trata de litigios tan complejos, y de *"extrema dificultad"* como son los de custodia de menores el riesgo de error no es mínimo. Debido a sus particularidades unido a los múltiples y complicados factores envueltos, generalmente en controversia, lo aconsejable y procedente es no prescindir del derecho que tienen los padres promovidos de su derecho a notificación y vista previa antes de adjudicar el remedio provisional en ausencia de circunstancias extraordinarias o urgencias debidamente acreditadas. El que la vista requerida

se señale dentro de un corto término después de la privación del interés protegido, resulta irrelevante. La disposición constitucional sobre el debido proceso no distingue entre un plazo corto o largo en cuanto a la privación de un derecho protegido. Basta con que la acción impugnada haya privado ese derecho protegido aunque sea por un corto período. *Connecticut v. Doehr, supra.*

La aplicación del debido proceso, sin embargo, no es inflexible. Debe amoldarse a las circunstancias particulares de cada caso. Sólo cuando están presentes circunstancias extraordinarias o una urgencia de suficiente intensidad se justifica, por excepción, que se prescinda de la garantía procesal y se posponga la previa notificación y el derecho a ser oído para después de concederse el remedio. *Smith v. Organization of Foster Families For Equality, and Reform,* 431 U.S. 816; 53 L Ed 2d _____; 97 S Ct 2094 (1977); *Mitchell v. W.T. Grant Co.,* 416 U.S. 600; 40 L Ed 2d 406; 94 S Ct 1895 (1974).

En ese sentido el caso que nos ocupa sufre de serias deficiencias. La petición presentada ante instancia no establece hechos que sostengan y apoyen aquellos factores que maticen a la demandante-recurrida como la persona idónea para que se le conceda la custodia solicitada aun provisionalmente. Ese factor como interés que también debe sopesarse al considerar el bienestar de las menores no surge con toda claridad de la petición presentada sin que ello se interprete que lo ponemos en duda. Tampoco se desprenden de las alegaciones incluidas bajo juramento en la petición otros factores tales como que ella dispone de las facilidades para transportar a las menores a la escuela, la salud psíquica de los que con ella conviven, atributos comunes a los intereses de las menores en lo referente a la comunidad donde vive, si ha convivido o interrelacionado con ellas anteriormente por períodos prolongados, y su habilidad económica para permitir que los menores mantengan el mismo estándar de vida actual que puedan gozar con su padre biológico. Ciertamente el carácter y estabilidad emocional de la demandante-recurrida son factores sobre los cuales el foro de instancia también debe brindar atención especial y exigir mayor certeza durante la vista que celebre. La aparente tirantez entre la familia materna de las menores y su padre biológico como resultado de la situación prevaleciente en torno a la herencia de la madre biológica de éstas es un elemento delicado y sumamente neurálgico sobre el cual igualmente hay que tomar medidas cautelares y precauciones. Todos esos factores relevantes deben ser objeto de evaluación objetiva apreciables solamente durante una vista evidenciaria antes de privar sumariamente al demandado-recurrente de la custodia de sus dos (2) hijas menores.

Por otro lado, no podemos dejar de expresarnos en relación con la parte de la orden recurrida, dictada el 9 de mayo de 1995, que dispone la citación del demandado-recurrente y lo intima para que *"muestre causa por la cual [el] Tribunal no deba dejar en vigor los remedios provisionales ... dictaminados mientras se ventila el caso en su fondo".* El efecto de tal providencia es pasar al demandado-recurrente el peso de probar que está apto para tener la custodia de sus hijas menores y afirmativamente establecer y refutar todas las alegaciones incluidas en la petición. Es decir, el foro de instancia además de haber privado al demandado-recurrente de un fundamental derecho protegido mediante su orden inexplicablemente cambia y altera el orden procesal existente para imponerle al demandado-recurrente la obligación y el peso de probar lo contrario de lo que le incumbe en primera instancia a la demandante-recurrida establecer sin así requerírselo a ésta. No se debe pasar por alto que la petición jurada no puede constituir la prueba necesaria exigida para adjudicar las circunstancias tan delicadas a las que allí se alude. Nuestro sistema adversativo ha establecido y reclama una percepción procesal complemente distinta. *"El debido proceso de ley impone que, para la negación de un derecho fundamental, **el valor y suficiencia de la prueba** sean medidos con criterios más rigurosos". P.P.D. v. Administrador General de Elecciones,* 111 D.P.R. 199, 223 (1981). (Enfasis suplido.)

Finalmente, la tesis de la parte demandante-recurrida referente a que se justifica la

expedición de la orden recurrida al amparo de la Regla 56.4 de las de Procedimiento Civil, 32 L.P.R.A. Ap. II, R. 56.4 tampoco nos convence. Dicha disposición procesal requiere que para poderse expedir una orden sin notificación previa tiene que aparecer claramente los daños y perjuicios o pérdidas irreparables que sufrirá el solicitante antes de notificarse y celebrarse la vista sobre la solicitud. Hemos examinado la petición presentada por la demandante-recurrida y sus alegaciones. Como dicho antes, de las mismas no se desprende cuáles hechos le constan de propio y personal conocimiento a la recurrida y cuáles no al igual que tampoco surge de dónde se obtiene la información sobre los hechos de la petición que no le constan a la recurrida de propio y personal conocimiento. No se acompaña prueba documental alguna que acredite los extremos alegados ni se enumeran ni sintetizan los daños irreparables que podrían sufrir las menores de no concederse el remedio solicitado antes de la fecha de la vista señalada para considerar la custodia de las menores como medida provisional. El rigor judicial cuando de excepciones a la regla general se trata como en este caso, no debe adquirir características de semejante laxitud.

Ante las consideraciones que anteceden a la luz de los criterios, conceptos y principios esbozados se expide el auto solicitado a los fines de dejar sin efecto las resoluciones recurridas emitidas por el foro de instancia el 9 y 30 de mayo de 1995. Ratificamos la nuestra del 12 de junio de 1995 en auxilio de nuestra jurisdicción apelativa y la modificamos a los únicos efectos de que los procedimientos comenzados se continúen de forma consistente con lo aquí resuelto.

Lo acuerda el tribunal y lo certifica la Secretaria General.

María de la C. González Cruz
Secretaria General