# 96 DTA 77

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL DE PONCE Y AIBONITO
## PANEL I

JANETTE LOPEZ CRUZ
Apelante

v.

VICTOR GUTIERREZ, ET ALS.
Apelados

Núm. KLAN-95-012361

San Juan, Puerto Rico, a 6 de febrero de 1996

Panel integrado por su presidente, Juez Sánchez Martínez
y los Jueces Córdova Arone y Segarra Olivero

Córdova Arone, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCION

En el presente recurso se apela de una sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce (Hon. Luis A. Amorós Alvarez, J.), de 15 de mayo de 1995. ██ Mediante la referida sentencia se desestima y se declara no ha lugar un recurso de Hábeas Corpus instado por la peticionaria de epígrafe. Por los fundamentos que se expresan más adelante, se revoca la sentencia apelada y se ordena el traslado del caso de epígrafe al Tribunal de Primera Instancia, Sala de Carolina

para la continuación de los procedimientos consistentes con lo dispuesto en esta sentencia.

Procedemos a hacer un recuento de los hechos alegados en el caso que nos ocupa así como del derecho que cobija nuestra determinación.

# I

Los hechos del presente recurso, según alegados por la parte apelante Janette López Cruz (en adelante *"Janette"* o *"la apelante"*) son los siguientes: ■ en el año 1986, la joven Janette López Cruz, quien para ese entonces contaba con diecisiete años de edad y estudiaba en la Escuela Superior Jardines de Ponce, quedó embarazada de su novio Francisco J. Quintana Rodríguez.

La apelante ocultó el embarazo a sus padres y cuando el mismo era aparente, éstos la llevaron al Hospital Regional de Ponce con el propósito de que fuera examinada. En ese momento la examinó el Dr. Juan Carlos Jiménez Cruz. La apelante le comunicó al médico que sus padres no sabían nada acerca de su embarazo, que tenía mucho miedo y que no sabía lo que podría pasar de ellos se enteraban ya que su padre se encontraba enfermo. El Dr. Jiménez Cruz le dijo que no les iba a decir nada. Cuando el doctor se comunicó con los padres de la apelante les indicó falsamente que ésta tenía un padecimiento de las glándulas tiroides que ocasionaba que retuviera líquido y que por esa razón tenía el abdomen distendido.

Alega la apelante que el Dr. Jiménez Cruz le propuso que la atendería en el hospital durante sus horas de clase de manera que sus padres no se dieran cuenta de su embarazo. De esta manera Janette fue alrededor de seis o siete veces a la oficina del médico en compañía de una amiga llamada Mirnely Vives Rosado para ser examinada. El médico la atendía fuera del horario de clínicas externas con el propósito de que nadie se diera cuenta.

El médico le propuso a la apelante un plan para ocultar el embarazo en lo que se lo informaban a los padres y le dijo que unos familiares de él podían cuidar del bebé en lo que aquéllos se enteraban de su nacimiento. Se acordó que una vez sus padres supieran lo acontecido Janette recuperaría a su hijo. La apelante aceptó el plan propuesto ante los temores e inseguridad sufrida y confiando en la afirmación del médico de que podía tener a su hijo una vez sus padres se enteraran.

A pesar de que no estaba dentro del plan esbozado, el médico comenzó a visitar a los padres de la apelante y fingió una relación de amistad con éstos, llegando incluso a invitarlos a pasear por el área de la Parguera en Lajas. Durante las visitas, el médico les informaba falsamente acerca del progreso de la enfermedad de Janette.

En el mes de diciembre de 1986, cuando Janette contaba con ocho meses y medio de embarazo, el médico, amparándose en la confianza que había logrado de los padres de ésta, les propuso que permitieran que la joven lo acompañara junto con otras enfermeras y médicos a una actividad en San Juan la cual duraría todo el fin de semana. Los padres de la apelante accedieron a lo solicitado.

Según la apelante, el verdadero objetivo de la invitación del médico era practicarle una cesárea antes del tiempo previsto para el término del embarazo. Esto evitaría que el niño naciera de improviso y que los padres se enteraran.

Para tratar de ocultar los síntomas del embarazo, el Dr. Jiménez Cruz le comentó a la madre de la apelante, Sra. Carmen Edith Cruz Rodríguez, que si aquélla sangraba o eliminaba agua por la vagina no era motivo de preocupación ya que esto era un efecto de los medicamentos que le estaba suministrando para la condición de las glándulas tiroides.

Mientras iban de camino a San Juan, el médico le habló a Janette acerca de la forma en que se realizaría la cesárea asegurándole que no habría problemas con el procedimiento ni con lo planificado. Una vez en el área metropolitana llegaron a la oficina de un médico que les estaba esperando quien inmediatamente preguntó la edad de la apelante. Luego de examinarla y constatar que no tenía los nueve meses de embarazo, este médico indicó que no podía practicar la cesárea.

Ante esta situación, el Dr. Jiménez Cruz se dedicó a dar vueltas en su vehículo por el área

metropolitana para pensar qué hacer. Pasado un tiempo, se detuvo en un taller de mecánica donde habló con un mecánico de autos el cual posteriormente se supo era el demandado Víctor Gutiérrez. El médico decidió ir al Hospital Regional de Ponce para practicarle la cesárea a la apelante.

Cuando llegaron al hospital mencionado el médico alegadamente brindó información incorrecta sobre el nombre, dirección y otros datos acerca de la apelante. Se realizó un examen y del mismo se concluyó que Janette iba a tener gemelos. El Dr. Jiménez realizó la cesárea sin problemas. De esta cesárea resultó el nacimiento de dos bebés, una hembra y un varón, en perfecto estado de salud. El médico alojó a la apelante en el último cuarto del área de maternidad prohibiéndole que saliera del mismo. Janette estuvo tres días recluida en el hospital.

Durante la estadía de la apelante en el hospital, ésta pudo visitar la guardería infantil *("nursery")* del lugar y ver a sus hijos.

La apelante cambió de opinión en relación con la entrega provisional de sus hijos a los parientes del médico y así se lo informó a éste. El Dr. Jiménez Cruz insistió vigorosamente en que la apelante no podía hacer eso alegando que sus padres podían enfermarse con la noticia. El médico, a través de diferentes argumentos e insistencia volvió a inducir a Janette a los efectos de cumplir con lo planificado.

El día que dieron de alta a la apelante le fueron entregados sus dos bebés los cuales se encontraban gozando de perfecto estado de salud. El médico la acompañó hasta el primer piso del hospital donde se encontraron con el mecánico, Sr. Víctor Gutiérrez quien a su vez estaba acompañado de una mujer. El médico le presentó estas personas a la apelante y le reiteró que éstos iban a cuidar de sus niños en lo que ésta le informaba a sus padres sobre lo acontecido. El médico le dijo a la apelante que no se preocupara, pues ella se iba a relacionar con los niños en lo que explicaba la situación a sus padres ya que él la iría a buscar los fines de semana para que fuera a verlos.

Para ocultar las molestias e incapacidad que produce la operación de cesárea, el médico puso un vendaje en una pierna de la apelante para simular que ella se había caído durante la actividad en San Juan.

Al regresar a su casa, Janette no dijo nada de lo acontecido a sus padres. Poco tiempo después fue a ver al Dr. Jiménez Cruz para que verificara el estado de la cesárea. El médico le examinó la herida y le dijo que el fin de semana próximo la iría a buscar para que fuera a ver a sus hijos. En esa ocasión le entregó a la apelante dos fotografías de los dos niños.

La apelante quedó esperanzada en la palabra del médico y se quedó esperándolo todo el fin de semana toda vez que aquél no apareció ni la llamó.

El lunes siguiente la apelante llamó al médico para preguntarle porqué no la había ido a buscar. En ese momento el médico le dijo que tenía que darle una mala noticia pues, supuestamente, la niña había muerto por tener hidrocefalia y el niño murió inmediatamente después por el sufrimiento como gemelo. La apelante sufrió un impacto emocional muy grande y le pidió al médico de favor que la llevara al cementerio para buscar el lugar donde estaban enterrados. La comúnicación se cortó.

La apelante siguió tratando de comúnicarse con el médico durante varios días y la única comúnicación que obtuvo fue una información a los efectos de que el médico se había ido de viaje para el estado de California. Después de esto no volvió a ver al Dr. Jiménez Cruz.

Por esta situación, la apelante vivió varios años angustiada y le contó a una amiga y a su hermana lo que había acontecido. Inclusive llegó a consultar a un profesional de la sicología para tratar de aliviar su dolor.

La apelante terminó sus estudios de escuela superior e ingresó a la Universidad Católica para hacer un bachillerato en enfermería. La inquietud por esta profesión se la creó el médico durante el tiempo en que estuvieron relacionados. Cuando la apelante fue a la clase sobre la maternidad y se discutió el tema relacionado con los gemelos fraternos, descubrió que la versión dada por el Dr. Jiménez Cruz

acerca de la muerte de su hijo por razón del sufrimiento al haber muerto la niña era increíble. Ante esa duda, Janette hizo una serie de diligencias con diferentes médicos para tratar de averiguar el paradero del Dr. Jiménez Cruz, logrando comúnicarse telefónicamente con él. La información que éste le brindó agravó las sospechas de la apelante a los efectos de que sus hijos estuvieran realmente vivos.

Las sospechas de la apelante sobre el posible engaño provocaron que se realizaran una serie de diligencias y se fuera a la policía a notificar sobre este asunto. El caso le fue asignado al agente José Luis Pacheco, adscrito al Cuerpo de Investigaciones Criminales (C.I.C ), quien empezó la investigación en el mes de marzo de 1994.

Durante el mes de mayo de 1994, el agente Pacheco descubrió que uno de los niños, el varón, estaba vivo y bajo la custodia de los esposos María Milagros Figueroa Rodríguez y Víctor Gutiérrez. También se descubrió que el niño está inscrito a nombre de estas personas en el Registro Demográfico y que ellos aseguran que la niña había fallecido a la edad de cuatro años, situación que se está investigando ante la existencia de serías dudas en torno a que la niña fallecida sea la hija biológica de la apelante.

Ante la situación alegada en la relación de hechos que hemos reseñado, con fecha de 23 de noviembre de 1994, se radicó una demanda ante el entonces Tribunal Superior de Puerto Rico, Sala de Ponce, ■ contra el Dr. Juan Carlos Jiménez Cruz, su esposa *"X"* y la Sociedad de Gananciales compuesta por ambos, contra María Milagros Figueroa Rodríguez, su esposo Víctor Gutiérrez y la Sociedad de Gananciales compuesta por ambos, contra el Estado Libre Asociado de Puerto Rico, y contra los demandados desconocidos *"A", "B", "C", "D",* y *"E".* En dicha demanda se reclamaba, en síntesis, una compensación en daños y perjuicios a favor de la apelante, sus padres y la Sociedad Legal de Gananciales compuesta por ambos, una partida correspondiente a los gastos incurridos en el proceso; por último, se solicitaba la recuperación de la custodia del menor por parte de la apelante con las debidas correcciones en el asiento de inscripción del nacimiento del menor en el Registro Demográfico.

Estando *sub judice* la demanda antes mencionada, el 10 de abril de 1995, la apelante radicó una solicitud urgente sobre *Hábeas Corpus* contra el matrimonio compuesto por los señores Víctor Gutiérrez y María Milagros Figueroa. En este recurso la apelante solicitó al Tribunal de Primera Instancia que se expidiera el auto para que los demandados comparecieran trayendo al menor para que luego del procedimiento legal correspondiente le fuera entregado a aquélla, alegando ser la verdadera madre.

La parte apelada respondió a este recurso mediante una *"moción de desestimación y/o traslado"* amparada en los siguientes fundamentos: (1) falta de jurisdicción sobre la materia; (2) falta de parte indispensable; (3) defecto sustancial de forma del recurso; (4) incumplimiento de las disposiciones de la Orden Administrativa Núm. XVI del Reglamento del Tribunal Supremo de Puerto Rico; (5) improcedencia del recurso extraordinario. Solicitaron, en la alternativa, el traslado del pleito a la Sala de Carolina del Tribunal de Primera Instancia, a tenor con las disposiciones de la Regla 3 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III R. 3.

El caso fue llamado a vista el 3 de mayo de 1995, en la cual los abogados argumentaron sus respectivas posiciones quedando el caso sometido para su resolución.

El 15 de mayo de 1995, el Tribunal de Primera Instancia emitió la sentencia que es objeto del presente recurso de apelación estableciendo lo siguiente en su parte dispositiva:

*"[E]ste Tribunal dicta SENTENCIA desestimando y declarando no ha lugar el recurso de Hábeas Corpus aquí instado. En su consecuencia, se ordena que las alegaciones de la parte demandante se continúen ventilando en el caso JDP94-0343 ante este Tribunal de Primera Instancia".*

En su recurso de apelación, la apelante hace tres señalamientos de error, a saber:

*"PRIMER ERROR: Erró el Tribunal de Primera Instancia al violentar el derecho constitucional de "libertad" de la apelante al no dejar que la parte peticionaria presentara prueba en la vista en su*

*fondo.*

*SEGUNDO ERROR: Erró el Tribunal al violentar el debido proceso de ley sustantivo y procesal de la apelante al permitir que la parte-peticionada presentara una "Moción de Desestimación y/o Traslado", acción totalmente improcedente según el procedimiento prescrito para el recurso extraordinario de Hábeas Corpus en el Código de Enjuiciamiento Criminal.*

*TERCER ERROR: Erró el Tribunal de Primera Instancia al denegar la solicitud de Hábeas Corpus de plano, bajo el fundamento erróneo de que al identificarse al menor con los apellidos Gutiérrez Figueroa en la petición de Hábeas Corpus, el mismo se presume hijo de los apelados y por ende no procede, de plano el recurso de Hábeas Corpus y si [sic] uno de filiación."*

## II

En este caso nos corresponde examinar dos controversias, a saber: primero, si procede el recurso de *Hábeas Corpus* para determinar la custodia del menor en cuestión y, segundo, si procede el traslado del caso al Tribunal de Primera Instancia, Sala de Carolina, toda vez que es en esa jurisdicción que residen los apelados de epígrafe. Contestamos ambas controversias en la afirmativa. Procedemos a explicarnos.

Según lo establece el Código Civil de Puerto Rico, la custodia de los hijos menores le corresponde a los padres con patria potestad, o al que se le haya concedido por el Tribunal luego de una vista sobre custodia. ■

La persona con derecho a custodia sobre un menor puede recuperarlo mediante el procedimiento de *Hábeas Corpus.* ■ según el Tribunal Supremo de Puerto Rico en *Castro v. Meléndez,* 82 D.P.R 573 (1961), en los casos en donde se reclama la custodia de un menor mediante este recurso, la misión del Tribunal en el ejercicio del *parens patriae* del Estado es determinar a quién corresponde la custodia de los menores guiado primordialmente por el bienestar y conveniencia de éstos.

Es decir, no es suficiente para la parte demandante meramente alegar su derecho a la custodia de los menores. En todo caso el Tribunal tiene que pronunciarse en cuanto al mejor bienestar de éstos, toda vez que el bienestar de los menores es el aspecto fundamental envuelto en el caso.

El Tribunal Supremo reiteró la doctrina de Castro en el caso *Marín v. Serrano Agosto,* 116 D.P.R. 603 (1985), expresando que en *"un procedimiento de Hábeas Corpus para reclamar la custodia de un menor la función de un tribunal no se limita a considerar el derecho del peticionario a la custodia sino que tiene que considerar el bienestar y la conveniencia del menor o menores cuya custodia se reclama".* Esto implica que el tribunal debe asumir una participación activa en el esclarecimiento de la verdad tomando siempre en consideración el bienestar del menor que es a fin de cuentas la parte más vulnerable.

Luego de revisar la jurisprudencia existente en Puerto Rico sobre el particular encontramos la mayoría de los casos en los cuales se ha utilizado el recurso de *Hábeas Corpus* trata de situaciones donde ha existido un procedimiento previo en el cual se le ha adjudicado la custodia a uno de los padres y el otro padre o un pariente de éste solicita la misma. *Centeno Alicea v. Ortiz,* 105 D.P.R. 523 (1977); *Marrero Reyes v. García Ramírez,* 105 D P.R. 90 (1976); *Rosell v. Meléndez,* 101 D.P.R. 329 (1973); *N.N.N. v N.N.N.,* 95 D.P.R. 289 (1967)

De ahí que el Tribunal Supremo se haya limitado a expresarse en torno al bienestar del menor únicamente. No encontramos un caso análogo al que nos ocupa.

El caso de autos presenta una situación novel y, a su vez, delicada; primero habrá que determinar si en realidad la apelante es la madre biológica del niño para así proceder a determinar los derechos, si alguno, que tiene ésta en relación con aquél. No obstante, por la naturaleza del caso que nos ocupa es preciso utilizar el procedimiento más rápido disponible para determinar la custodia del menor en cuestión.

La situación a la cual nos enfrentamos en el caso de autos es una que no ha sido contemplada

previamente en la jurisprudencia de Puerto Rico. Somos conscientes de la tarea difícil a la que se enfrentará el Tribunal de Primera Instancia al momento de entrar a dilucidar la controversia en el caso de autos toda vez que de un lado están en pugna los intereses de los demandantes y demandados y, por el otro, se encuentra el aspecto fundamental del bienestar del menor. Sin embargo, con el propósito de que este asunto se dilucide de la manera más rápida posible es que concluimos que procede el procedimiento de *Hábeas Corpus* a tales efectos.

Concluir lo contrario implicaría dilatar el sufrimiento de las partes, en particular el niño, por un término que podría cubrir años de litigación. Esto, a fin de cuentas, iría en detrimento del bienestar del menor en controversia.

Nuestros esfuerzos van dirigidos a que se aclare la controversia de autos a la mayor brevedad posible y que una vez se llegue a un resultado, cualquiera que sea el mismo, este niño pueda llevar una vida normal dentro de un ambiente libre de controversias sobre su origen y pertenencia.

Estamos de acuerdo con el Tribunal de Primera Instancia a los efectos de que *"[e]l caso de autos es más complejo que una simple solicitud de custodia. Se trata de una acción para recuperar un hijo que alegadamente le fue arrebatado e ilegalmente entregado a otras personas quienes lo inscribieron con sus apellidos. No es cuestión de adjudicarle la custodia del niño. Existen unos supuestos padres que ostentan la custodia y que habría que determinar si éstos son o no los verdaderos padres de ese menor."*

No obstante, discrepamos en el sentido de que por existir una reclamación de daños y perjuicios y custodia sobre los mismos hechos el recurso de *Hábeas Corpus* no procede. según el tribunal *a quo*, *"la vía que más favorece a las partes y que abona a la economía procesal es la acción ordinaria que ya se encuentra presentada ante [ese] tribunal."* Se equivoca el Tribunal de Primera Instancia.

El tribunal a quo en su sentencia parece perder de perspectiva el elemento fundamental en este caso: el bienestar del menor. Declarar no ha lugar el recurso de *Hábeas Corpus* y dilucidar la custodia de este menor por la vía ordinaria dentro de un pleito de daños implica que el asunto puede tardar años. Mientras tanto, procede preguntarnos qué va a pasar con este menor en relación con toda la situación que le rodea en estos momentos.

Si dirigimos nuestra atención hacia el bienestar de este menor, no podemos llegar a otra conclusión que la alternativa idónea para resolver la controversia en cuanto a su custodia es la vía sumaria provista por el recurso de *Hábeas Corpus*. Esto permite que se dilucide la situación del menor con independencia de los procedimientos en el caso de daños y perjuicios.

Desde la primera vez que se utilizó el recurso extraordinario de *Hábeas Corpus* para determinar la custodia de un menor en nuestra jurisdicción, nuestro Tribunal Supremo dejó sentada la doctrina de que en recursos de esta naturaleza, el bienestar del menor es el elemento predominante a considerar. *Chabert v. Sánchez*, 29 D.P.R. 241 (1921). En este caso el Tribunal Supremo de Puerto Rico, tomó la misma determinación que hemos tomado en este caso: devolver el caso al Tribunal de Primera Instancia para que a la luz de la prueba presentada y de acuerdo con el bienestar del menor determine la custodia del mismo. Dilatar esta determinación mediante otros casos civiles que surgen de la situación que dio pie al presente caso no tiene otro efecto que causar daños irreparables al menor en cuestión.

### III

En cuanto a la solicitud de traslado presentada por los apelados en el caso de epígrafe es preciso señalar que por tratarse de un caso de naturaleza civil es necesario recurrir a las Reglas de Procedimiento Civil en busca del derecho aplicable. Según la Regla 3.4 de las de Procedimiento Civil, 32 L.P.R.A.Ap. III R 3 4, *"el pleito deberá presentarse en la sección o sala correspondiente a aquella en que tuvieran establecidas sus residencias los demandados".*

En el caso de autos, tanto los demandados como el menor objeto de este pleito residen en la jurisdicción correspondiente a la Sala de Carolina, por lo que procede el traslado del pleito a esta sala a la luz de lo dispuesto por la disposición antes mencionada. A tenor con las disposiciones de la Regla

14.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III R 14.2. El Tribunal de Primera Instancia, Sala de Ponce, deberá abstenerse de resolver el caso JPD-94-0343 hasta tanto se resuelva el recurso de *Hábeas Corpus* que habrá de resolver la Sala de Carolina, esto sin perjuicio de los trámites que puedan seguirse en el primero.

## IV

Por los fundamentos antes expuestos se revoca la sentencia apelada. Se ordena el traslado del pleito al Tribunal de Primera Instancia, Sala de Carolina, y se devuelve el caso para la continuación de los procedimientos a la luz de lo dispuesto en la presente sentencia.

Lo acordó el Tribunal y lo certifica la señora Secretaria General.

María de la C. González Cruz
Secretaria General

### ESCOLIOS 96 DTA 77

**1.** El recurso fue radicado inicialmente ante el Tribunal Supremo de Puerto Rico alegándose que el caso planteaba una violación de dos derechos constitucionales fundamentales de la apelante, a saber, su derecho de libertad y su derecho a un debido proceso de ley sustantivo y procesal. El 3 de noviembre de 1995, el Tribunal Supremo emitió una resolución remitiendo el recurso a este Tribunal. Según nuestro más alto foro, en el caso no existe una cuestión constitucional sustancial.

**2.** Estos hechos están sujetos a ser probados por la peticionaria. Los apelados no están conformes con esta relación de hechos según consta de su alegato de réplica a la apelación.

**3.** Este caso fue identificado como JDP 94-02343.

**4.** 31 L. P. R.A. secs. 383 y 591.

**5.** Veáse, D Rivé Rivera, *Recursos Extraordinarios,* San Juan, Universidad Interamericana, 1989, págs 124-125.