AGNES B. COLÓN VÁZQUEZ, JOSÉ R. PESQUERA GARCÍA, *Ex parte*, peticionarios; ENNIO COLÓN GARCÍA y MARÍA TERESA VÁZQUEZ DÍAZ, promoventes y recurridos, *v.* AGNES B. COLÓN VÁZQUEZ y JOSÉ R. PESQUERA GARCÍA, promovidos y peticionarios.

*Número:* CE-89-167          *Resuelto:* 30 de abril de 1990

*Teresita Picó Vidal*, abogada de los peticionarios; *Luis E. Martir Lugo*, abogado de los recurridos.

## SENTENCIA

### I

Agnes B. Colón Vázquez y José R. Pesquera García contrajeron nupcias el 22 de diciembre de 1975. Fruto de esa relación nació el menor Ennio José Pesquera.

El matrimonio Pesquera-Colón fue disuelto mediante sentencia de divorcio por mutuo consentimiento el 18 de marzo de 1981. Dicha sentencia concedió la patria potestad sobre el menor a ambos peticionarios y la custodia a la señora Colón Vázquez. Estableció, además, relaciones paterno-filiales durante fines de semana alternos.

Así las cosas, el 8 de septiembre de 1988 los abuelos maternos del menor (aquí recurridos) instaron moción para solicitar relaciones abuelo-filiales con su nieto.

Los padres del menor se opusieron a dicha solicitud y esencialmente alegaron que la misma atentaba contra los términos de la sentencia de divorcio sobre las relaciones paterno-filiales y los derechos de patria potestad y custodia de los padres.

El foro de instancia refirió el caso al Programa de Relaciones de Familia para que los trabajadores sociales y psicólogos de dicho programa evaluaran la solicitud de los abuelos recurridos. Mientras, dejó en vigor las relaciones paterno-filiales y los términos de la sentencia de divorcio.

Sin que se hubiera hecho una evaluación, los abuelos recurridos solicitaron al foro de instancia que ordenara a los padres peticionarios entregarles el niño para llevárselo a Guánica durante el receso de Semana Santa.

Los padres peticionarios se opusieron y alegaron similares fundamentos a los expuestos en su oposición a la solicitud de los abuelos recurridos sobre derechos de visita.

El foro de instancia emitió una resolución mediante la cual autorizaba a los abuelos a llevar consigo al menor al campamento de Semana Santa en Guánica.

De esa resolución acudieron los padres ante nos. Ello motivó nuestra intervención mediante trámite de mostrar causa y la paralización de los procedimientos en instancia.

Las partes han comparecido en apoyo de sus respectivas posiciones.

Estamos ante una sentencia de divorcio que concede la patria potestad compartida por ambos padres y la custodia del menor a la madre. No se nos han justificado circunstancias especiales que requieran nuestra intervención para variar tal dictamen judicial que perdura, sin alteraciones, con todos sus efectos legales.

Visto, además, que en nuestro derecho positivo no existe expresión legislativa ni jurisprudencial que le reconozca capacidad jurídica a los abuelos para solicitar derechos de visita sobre sus nietos cuando ambos padres están vivos y aptos para ejercer la patria potestad y custodia sobre aquéllos, *se expide el auto y se revoca la resolución del foro de instancia.*

*Se dicta sentencia y se desestima la acción de los abuelos en reclamación de derechos de visita, dentro de este pleito de divorcio, por carecer de capacidad jurídica para instar la misma.*

Así lo pronunció y manda el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Alonso Alonso emitió un voto particular y de conformidad. La Juez Asociada Señora Naveira de Rodón no intervino. El Juez Asociado Señor Hernández Denton se inhibió.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*

Voto particular y de conformidad del Juez Asociado Señor Alonso Alonso.

¿Tienen los abuelos derechos de visita sobre sus nietos aun cuando ambos padres están *vivos y aptos* para ejercer la patria potestad y custodia sobre sus hijos? En ausencia de una expresión legislativa que conceda tal derecho, la respuesta es en la negativa.

I

Los esposos Agnes B. Colón Vázquez y José R. Pesquera García contrajeron matrimonio el 22 de diciembre de 1975. Durante el matrimonio procrearon un hijo de nombre Ennio José Pesquera Colón (aún menor de edad).

Mediante Sentencia de 18 de marzo de 1981 se decretó el divorcio de los esposos Pesquera-Colón por la causal de mutuo consentimiento. En cuanto a la patria potestad, custodia y relaciones paterno-filiales sobre el menor Ennio José, la sentencia dispuso:

Se otorga la *patria potestad a ambos* peticionarios para ejercitarla conjuntamente y la *custodia de los hijos menores a la peticionaria Agnes B. Colón Vázquez.*

Las relaciones filiales se regularán de la siguiente manera:

Los peticionarios tendrán en su compañía al referido hijo menor en fines de semana alternos. Durante los restantes días de la semana el peticionario podrá relacionarse con dicho hijo menor cuando así lo desee, previo acuerdo con la peticionaria. (Énfasis suplido.) Apéndice IV, pág. 7.

El 8 de septiembre de 1988 los recurridos, abuelos maternos del menor, instaron moción para solicitar relaciones abuelo-filiales y alegaron que la madre del menor impedía que ellos se relacionaran con su nieto. Fundamentaron su alegado derecho de visita sobre su nieto en que supuestamente su hija dejó que el menor residiera y compartiera con ellos desde los dos (2) años hasta que el menor cumplió los ocho (8) años. Sostuvieron, además, que han provisto de ropa, de alimentos y de las necesidades básicas al menor por contar con solvencia económica.

Los recurridos solicitaron al foro de instancia una orden para poder relacionarse con el menor todos los días, o los que el tribunal estimase necesarios, después de salir de la escuela. Pidieron, además, que un trabajador social rindiera un informe sobre el caso.

La peticionaria expuso al foro de instancia la necesidad de la presencia del padre en la vista, dado que los intereses de éste

podrían verse afectados con lo que se resolviera en la controversia.

Los peticionarios, padre y madre del menor, presentaron réplica a la moción de los recurridos. Alegaron que el cambio ocurrido en las relaciones del menor con sus abuelos obedecía a las evaluaciones y recomendaciones de maestros, psicólogos y facultativos médicos que atendían al menor, quienes diagnosticaron que éste tenía problemas de comportamiento, de aprendizaje y de desarrollo emocional, entre otros. Según los peticionarios, la psiquiatra del niño encontró que debía fortalecerse la identidad de éste con el hogar primario y sus relaciones afectivas con sus padres.

De acuerdo con los peticionarios, en beneficio del bienestar del menor, la psiquiatra recomendó interrumpir las relaciones abuelo-filiales como medida indispensable del plan de tratamiento del menor.

Por otro lado, señalaron los peticionarios que la solicitud de tener relaciones abuelo-filiales todos los días después de salir de la escuela confligía con los términos provistos por la sentencia de divorcio, en cuanto a las relaciones paterno-filiales, y atentaba contra los derechos de patria potestad y custodia de los padres del menor.

Los peticionarios suplicaron al foro de instancia que declarara sin lugar la solicitud de relaciones abuelo-filiales y que cualquier informe o evaluación ordenada por el tribunal fuera realizada por un profesional clínico.

El 12 de diciembre de 1988 el foro de instancia refirió el caso al Programa de Relaciones de Familia para que una trabajadora social y unos psicólogos evaluaran la solicitud de los abuelos recurridos. En el ínterin *dejó en pleno vigor las relaciones paterno-filiales de la sentencia de divorcio.*

Mientras estaba el caso bajo el Programa de Relaciones de Familia, los abuelos recurridos solicitaron al foro de instancia que aclarase un pronunciamiento hecho en cámara sobre si el menor pasaría el Día de Reyes de 1989 con ellos. Luego de varias mociones de oposición al respecto, el incidente quedó resuelto

cuando el foro de instancia ordenó a los peticionarios llevar al menor a casa de los abuelos el Día de Reyes para que permaneciera allí, sólo con los abuelos, hasta la tarde de ese día.

' Nuevamente en 8 de febrero de 1989 los abuelos recurridos solicitaron al tribunal de instancia que ordenara a los padres entregar al niño para llevárselo a Guánica durante las vacaciones de Semana Santa.

Los peticionarios volvieron a oponerse a tal solicitud y alegaron que era contraria a las recomendaciones de la psiquiatra que atendía al niño y que atentaba contra lo dispuesto en la sentencia de divorcio en torno a la patria potestad y custodia de los padres, y que era la situación legal imperante según lo dispuesto por la orden del foro de instancia de 12 de diciembre de 1988.

El foro de instancia emitió, el 7 de marzo de 1989, una resolución mediante la cual autorizaba a los abuelos a llevarse el menor al campamento de Semana Santa en Guánica desde el 22 al 24 de marzo; luego los abuelos lo regresarían al hogar materno.

De esa resolución acuden ante nos los peticionarios y nos señalan que:

> Erró el tribunal de instancia al declarar con lugar la solicitud de los abuelos maternos autorizando a llevarse consigo a su nieto menor, sin el consentimiento y en contra de las objeciones de los padres con patria potestad y custodia sobre el menor, por constituir dicha decisión un claro abuso de su discreción.

El 17 de marzo de 1989 emitimos una orden para que los recurridos mostraran causa por la cual no debíamos ordenar una vista en el foro de instancia para que se ventilara toda la controversia. Paralizamos, además, los procedimientos en el foro de instancia.

Los recurridos han comparecido.

## II

Nuestro Código Civil dispone que "[l]a patria potestad sobre los hijos no emancipados corresponde, a ambos padres conjuntamente . . . ". Art. 152 del Código Civil, según enmendado, 31

L.P.R.A. sec. 591. Esta regla general aplica cuando está vigente el matrimonio y puede ser variada por el tribunal mediante decreto de divorcio. Art. 107 del Código Civil, según enmendado, 31 L.P.R.A. sec. 383. Aun después de decretado el divorcio no existe impedimento legal para conceder la patria potestad y la custodia compartida a los ex cónyuges. *Torres, Ex parte,* 118 D.P.R. 469, 480 (1987).

La patria potestad es la autoridad que el Estado le reconoce a los padres sobre el patrimonio y la persona de sus hijos no emancipados para que aquéllos puedan cumplir los deberes que la ley le impone sobre éstos. Tal autoridad la ejercen los padres para beneficio del menor. *Arbona v. Torres,* 24 D.P.R. 450 (1916); *Álvarez v. Srio. de Hacienda,* 80 D.P.R. 16, 50–51 (1957). El interés de los padres en la patria potestad de los hijos es fundamental para el derecho a la libertad protegido constitucionalmente —*Mallen v. Vidal et al.,* 25 D.P.R. 669 (1917); *May v. Anderson,* 345 U.S. 528 (1953); *Stanley v. Illinois,* 405 U.S. 645 (1972)— y cuya privación, suspensión o limitación requiere de circunstancias especiales que justifiquen la intervención del Estado (*e.g.* abandono, maltrato, etc.). Véase Art. 166 del Código Civil, según enmendado, 31 L.P.R.A. sec. 634. De ahí, por ejemplo, que al padre del hijo no emancipado a quien la sentencia de divorcio le otorga la patria potestad y la custodia puede perderla si voluntariamente abandona al hijo por un período mayor de seis (6) meses. Para ello debe seguirse el procedimiento establecido por ley. Véanse: Art. 164 del Código Civil, según enmendado, 31 L.P.R.A. sec. 632; *Rojas v. Colón,* 27 D.P.R. 882, 884–885 (1919).

Al mismo tiempo la custodia, atributo inherente a la patria potestad, es la facultad y al mismo tiempo la obligación legal de los padres de tener diariamente en su compañía a los hijos no emancipados en pos de su bienestar. Art. 153 del Código Civil, 31 L.P.R.A. sec. 601. Es, como expresamos en *Torres, Ex parte,* supra, pág. 477, "la tenencia o control físico que tiene un progenitor sobre sus hijos".

En el caso de autos la sentencia de divorcio dispuso que ambos padres compartirían la patria potestad sobre el menor. La madre tendría la custodia.

Tal dictamen judicial, con todos sus efectos legales, *no ha sido alterado*. El récord tampoco demuestra la existencia de circunstancias especiales que requieran la intervención del Estado para privar o limitar el ejercicio de la patria potestad concedida a ambos padres y la custodia concedida a la madre.[1]

Tampoco se trata en este caso de la acción que hemos reconocido a los padres psicológicos (abuelos) que solicitan la *custodia* de los hijos psicológicos (nietos). *N.N.N. v. N.N.N.*, 95 D.P.R. 291 (1967); *Rosell v. Meléndez*, 101 D.P.R. 329, 330 (1973), opinión disidente del Juez Asociado Señor Cadilla Ginorio; *Feliciano v. Guzmán*, 102 D.P.R. 246 (1974); *Marrero Reyes v. García Ramírez*, 105 D.P.R. 90 (1976); *Centeno Alicea v. Ortiz*, 105 D.P.R. 523 (1977).

Aparte de que los recurridos no solicitan la custodia del menor, en el récord no existe prueba que permita seguir ese curso de acción ni se indican las circunstancias que justificarían la concesión de la custodia a los abuelos. El reclamo de los abuelos se limita a exigir alegados derechos de visita.

Hay que recordar que el derecho de visita se justifica como medio de mantener el vínculo filiatorio o emocional entre el menor y otras personas para beneficio de aquél. De ahí que reconocemos el derecho del cónyuge no custodio a visitar a sus hijos. *Sterzinger v. Ramírez*, 116 D.P.R. 762 (1985). Ya en *Centeno Alicea v. Ortiz*, supra, habíamos expresado que el derecho a las relaciones paterno-filiales debía extenderse lo más liberalmente posible sin escatimar el tiempo que el menor pueda estar con el progenitor que no tenga su custodia.

*Sin embargo, en nuestro derecho positivo no existe expresión legislativa ni jurisprudencial que reconozca a los abuelos el*

---

[1] Tampoco estamos ante las circunstancias de emergencia que permiten al Tribunal Superior privar a los padres de la custodia de un menor que es objeto de maltrato o negligencia. Véanse los Arts. 31 a 37 de la Ley de Protección a Menores, Ley Núm. 75 de 28 de mayo de 1980 (8 L.P.R.A. secs. 431 a 437).

*derecho de visitar a sus nietos, menores no emancipados, cuando sus padres están vivos y aptos para ejercer la patria potestad y custodia que les reconoce la ley.*

En 1987 se presentó a la consideración del Senado de Puerto Rico el P. del S. 1245 para enmendar el Art. 107 del Código Civil, *supra*, a fin de facultar a los tribunales a conceder derechos de visita razonables a los abuelos luego de decretado el divorcio de los progenitores. Tal enmienda no ha sido aprobada.

En las jurisdicciones de tradición civilista, si bien encuentra su génesis en la jurisprudencia,(2) el derecho de visita de los abuelos está recogido estatutariamente. Así en Francia, el Art. 371–4 del Código Civil le reconoce capacidad jurídica a los abuelos para instar acción judicial para hacer valer sus derechos de visita sobre sus nietos. En España, la reforma del derecho de familia de 1981 reconoció que "[n]o podrá impedirse sin justa causa las relaciones personales entre el hijo y otros parientes y allegados". Art. 161 del Código Civil español, párrafo segundo. Véase *Comentarios a las reformas del derecho de familia*, Madrid, Ed. Tecnos, 1984, Vol. II, págs. 1.074–1.076. Se ha sostenido que los abuelos caen entre los más calificados de los "otros parientes" a los que se refiere el artículo. F. Rivero Hernández, *El derecho de visita: teoría y praxis*, 2da ed., Pamplona, EUNSA, 1982, págs. 78–80. Su capacidad jurídica para instar la acción, según dispuesta estatutariamente, se fundamenta en el abuso del derecho por parte del titular de la patria potestad,(3) como el derecho propio de los abuelos, en consideración a los derechos y a las obligaciones

---

(2)  Véase la sentencia de la *Cour de Cassation* francesa de 8 de julio de 1857, donde se sostuvo que el padre no puede oponerse injustificadamente a las relaciones de sus hijos con sus abuelos.

(3)  Las sentencias del Tribunal Supremo español Núm. 77 de 9 de junio de 1909, 115 Jurisprudencia Civil 397, 399; Núm. 171 de 24 de junio de 1929, 189 Jurisprudencia Civil 1048, 1051; Núm. 104 de 14 de octubre de 1935, 220 Jurisprudencia Civil 414, 433–434 y el Acuerdo del Tribunal Tutelar de Menores de Valencia de 15 de diciembre de 1939 reconocieron en España, antes de las reformas de 1981 al Código Civil, que los abuelos tenían derecho de visitar y comunicarse con sus nietos y que los padres no podían, arbitrariamente, limitar ese derecho so pena de incurrir en abuso de su autoridad de patria potestad. Los hechos de esas sentencias, los cuales distan mucho de los de autos, justificaron esa solución jurisprudencial. Los hechos en autos nos permiten arribar a distinta solución.

que según el Código Civil relacionan a los abuelos con sus nietos —*e.g.*, alimentos, tutela legítima, derechos sucesorios— en el parentesco leal en línea directa que les une o en el parentesco biológico o comunidad de sangre. Rivero Hernández, *op. cit.*, pág. 80.

Este reconocimiento estatutario de derechos está fundado en una concepción sociológica de un grupo familiar extendido, esto es, donde conviven tres (3) generaciones inmediatas en la misma vivienda o próximos en la comunidad.

Por otro lado, bajo los principios del *common law* no se le reconoce a los abuelos un derecho a visitar a sus nietos si los padres con patria potestad y custodia se oponen a tales visitas. El fundamento de tal norma general es que si los tribunales pusieran en vigor tal derecho estarían socavando la autoridad que la patria potestad le concede a los padres sobre los menores no emancipados.

Al mismo tiempo, se entiende que perjudicaría los mejores intereses del menor al ponerlo en medio del conflicto de autoridades y de las rencillas sentimentales entre los padres y los abuelos.

Por ello, los tribunales estatales de Estados Unidos han sostenido que la obligación, si alguna, de los padres de permitir que los abuelos visiten a sus nietos es *moral*, no legal y, por lo tanto, los tribunales no pueden ponerla en vigor a menos que se demuestre la incapacidad de los padres para ejercer la patria potestad y custodia sobre los menores no emancipados. *Succession of Reiss*, 15 S.O. 151 (La. 1894); *Smith v. Painter*, 408 S.W.2d 785 (Tex. 1966); *Kay v. Kay*, 112 N.E.2d 562 (Ohio 1953); *People ex rel. Schachter v. Kahn*, 269 N.Y.S. 173 (1934); *Jackson v. Fitzgerald*, 185 A.2d 724 (D.C. 1962); P.C. Borzi, *Statutory Visitation Rights of Grandparents—One Step Closer to the Best Interest of the Child*, 26 Cath. U.L. Rev. 387, 388–392 (1976); Anotación, *Grandparents' Visitation Rights*, 90 A.L.R.3d 222 (1979).

Ahora bien, a través de sus legislaturas estatales cuarenta y dos (42) estados de Estados Unidos les conceden capacidad

jurídica a los abuelos para instar una acción independiente mediante la solicitud de derechos de visita sobre sus nietos. H.D. Krause, *Family Law: Cases, Comments and Questions*, 2da ed., West Publishing Co., 1983, págs. 792–798; E. González Tejera, *Bienestar del menor: señalamientos en torno a la patria potestad, custodia y adopción,* LIV (Núm. 3) Rev. Jur. U.P.R. 409, 458 (1985); Borzi, *supra,* págs. 392–395; Gault, *Grandparent Grandchild Visitation,* 37 Tex. B.J. 433 (1974). En general, estos estatutos conceden discreción a los tribunales para otorgar derecho de visita a los abuelos en diversas circunstancias y cuando se demuestra que ello beneficia los intereses del menor. Los mismos suplen a los abuelos de capacidad jurídica necesaria, que no le reconoce el *common law,* para instar la acción. Pero no les conceden automáticamente a los abuelos el derecho de visitar o tener de visita a sus nietos. Siempre será necesario demostrar que reconocerle tal derecho a los abuelos redunda en beneficios para el menor.

En Puerto Rico, *en ausencia de expresión legislativa,* no hemos reconocido tales derechos a los abuelos.[4] Estando vivos y aptos los padres para ejercer la patria potestad y custodia que les reconoce la ley, y en este caso por la sentencia de divorcio, los abuelos carecen de capacidad jurídica para reclamar derechos de visita sobre sus nietos bajo el estado de derecho vigente.

En nada desvirtúa lo aquí resuelto con nuestros pronunciamientos en *Piñero Crespo v. Gordillo Gil,* 122 D.P.R. 246 (1988). Allí reconocimos que los abuelos tienen la obligación legal —Arts. 143 y 144 del Código Civil, 31 L.P.R.A. secs. 562 y 563— de alimentar a sus nietos, pero dejamos claro que tal obligación es subsidiaria a la de los padres, es decir, surge cuando los padres no pueden proveerlos, ya sea por incapacidad física o mental o por no contar con suficientes recursos económicos.

---

[4]    Nada impide que la Asamblea Legislativa le conceda, mediante legislación al respecto, capacidad jurídica a los abuelos para instar la acción para solicitar derecho de visita a sus nietos en las circunstancias que estime pertinente.

El reconocimiento de tal obligación de los abuelos no establece, automáticamente, un derecho recíproco a visitar a los nietos.[5]

El Prof. Efraín González Tejera, luego de reconocer que en cuarenta y dos (42) estados de Estados Unidos se les reconoce a los abuelos capacidad jurídica para instar la acción en que reclaman derechos de visita, expresa:

> Sería conveniente que se establezcan normas, *preferiblemente por la Legislatura*. En nuestra opinión un ascendiente del menor, vivo el ascendiente intermedio, no debe tener derecho a visitar su descendiente. Concebimos, sin embargo, situaciones donde sería conveniente al bienestar del menor permitir que el abuelo o bisabuelo tenga acceso al niño. Muerto uno de los padres, incapacitado mental o físicamente o encarcelado, el abuelo puede llenar un vacío importante en la vida del menor, *pero vivos y aptos para la custodia los padres, creemos que las visitas de los ascendientes de ulterior grado deben hacerse depender de la total discreción de quien ejerce la custodia. En otras palabras, creemos que la última palabra sobre estos asuntos debe ser suya y no de los tribunales.* Nos parece que permitirle visitas como cuestión de derecho a los abuelos, y otros parientes, nos llevaría a sobre-legalizar las relaciones de familia en áreas tan delicadas, donde la excesiva litigación produce más costos que beneficios. (Énfasis suplido.) González Tejera, *supra*, págs. 458–459.

El hecho de que no se les reconozca un derecho de visita a los abuelos maternos en el caso de autos no les impide a los actores de esta controversia que cooperen entre sí en pro del bienestar del menor, que debe ser el objetivo más importante que debe lograrse. Nada ganan los abuelos si se les reconoce el derecho de visita por un poder externo a la voluntad de su hija. Nada ganan los padres del menor con que se les deje de reconocer tal derecho a los abuelos si con ello el menor continúa en "la angustia de hallarse entre dos partes en entendible, pero dañina competencia por su afecto . . . [d]e la armonía y la abnegación de las partes,

---

[5] Tampoco creemos que lo justifique su potencial capacidad de ejercer la tutela legítima —Art. 178(1) del Código Civil, 31 L.P.R.A. sec. 701— ni de ser los posibles causantes mortis causa de sus nietos.

más de lo que pueda hacerse en ley, es que en realidad depende el bienestar [del] menor". *Marrero Reyes v. García Ramírez*, supra, págs. 107–108.

Réstanos señalar que por el hecho de que la resolución del tribunal de instancia se circunscribe a conceder a los abuelos el derecho a tener de visita a su nieto durante el fin de semana de 22 a 24 de marzo de 1989, no convierte en académico lo aquí resuelto. La controversia planteada es recurrente o repetitiva. *El Vocero v. Junta de Planificación*, 121 D.P.R. 115 (1988).

Por estos fundamentos, expreso mi conformidad con la sentencia dictada en el caso de autos.