# 2006 DTA 71

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE BAYAMÓN
PANEL III – SUSTITUTO**

FRANCISCO DE TORRES HIGHLEY
Recurrido

v.

CHRISTINE DOEER
Recurrida

DR. FRANCISCO DE TORRES Y SU ESPOSA, IRIS HIGHLEY
Peticionarios

Núm. KLCE-05-00712

San Juan, Puerto Rico, a 20 de abril de 2006

Panel integrado por su Presidenta, la Juez Bajandas Vélez,
el Juez Aponte Hernández y el Juez Vivoni del Valle

Aponte Hernández, Juez Ponente

RECEIVED
AUG 2 3 2006
SERIALS DEPARTMENT
HARVARD LAW SCHOOL LIBRARY

## TEXTO COMPLETO DE LA SENTENCIA

Los peticionarios, el doctor Francisco De Torres Font y su esposa señora Iris Highley, nos solicitan que revoquemos la resolución emitida el 11 de mayo de 2005 por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante, TPI). Mediante la misma, dicho foro denegó la solicitud de reconsideración de la *Resolución y Orden Nunc Pro Tunc* de 27 de febrero de 2004, la cual impuso a los peticionarios la obligación de sufragar una pensión alimentaria suplementaria en beneficio de su nieto menor de edad, retroactiva al 16 de diciembre de 2001.

Por los fundamentos que exponemos, expedimos el auto y revocamos la resolución recurrida.

I

La causa que nos ocupa ha tenido una larga y accidentada trayectoria procesal. ■

El señor Francisco De Torres Highley (en adelante, Sr. De Torres Highley) y la señora Christine Doeer (en adelante, Sra. Doeer), estuvieron casados entre sí, desde el 4 de diciembre de 1993 hasta el 18 de noviembre de 1999, fecha en que el TPI emitió sentencia de divorcio. ■ Mediante dicha sentencia, el TPI mantuvo en vigor la pensión provisional de $1,200 para beneficio del hijo menor de edad procreado durante el ya disuelto matrimonio. ■

Luego de los trámites ante la Oficial Examinadora de Pensiones Alimentarias, Lcda. Catherine Hoffman, el 20 de septiembre de 2000 el TPI acogió las recomendaciones del informe emitido por ésta y fijó al Sr. De Torres Highley una pensión alimentaria permanente de $1,693 para beneficio del menor, retroactiva al 27 de agosto de 1999. ■

Tres meses más tarde, el 13 de diciembre de 2000, el Sr. De Torres Highley solicitó con carácter de urgencia la revisión de la pensión alimentaria, alegando que la Examinadora se había equivocado en el cálculo de sus ingresos y que en los últimos meses se le había retenido el 100% de sus ingresos para el pago de la pensión. ■ El 8 de febrero de 2001, la Sra. Doeer presentó oposición a la solicitud de revisión de la pensión alimentaria. Alegó ésta, que el Sr. De Torres Highley cuenta con ingresos suficientes para pagar la pensión fijada. Además presentó una moción de desacato, alegando que el Sr. De Torres Highley tenía un atraso de $11,255.09 en el pago de la pensión alimentaria. ■

En atención a la solicitud del Sr. De Torres Highley, el 2 de julio de 2001, el TPI emitió orden de pensión alimentaria provisional en la cual rebajó a $1,026 mensuales la pensión alimentaria impuesta al Sr. De Torres Highley. Sin embargo, no atendió la solicitud de desacato. ■

El 24 de septiembre de 2001, la Sra. Doeer solicitó nuevamente que se encontrara incurso en desacato al Sr. De Torres Highley. Esta vez alegó que el atraso ascendía a $16,626. ■

En respuesta a la solicitud de la Sra. Doeer, el 11 de octubre de 2001, el TPI celebró vista de desacato. Según surge de la minuta, en esa ocasión, el TPI restableció las relaciones paterno-filiales *"en la casa de los abuelos paternos"*, pero no encontró al Sr. De Torres Highley incurso en desacato porque éste presentó evidencia de que no había generado ingresos durante varios meses. ■

Así las cosas, el 2 de noviembre de 2001, la Sra. Doeer solicitó al TPI la inclusión al pleito de los abuelos paternos del menor para que éstos aportaran a la pensión alimentaria, la cual el padre alimentante alegó no tener capacidad de pagar. ■ El abuelo paterno, doctor Francisco De Torres Font, fue emplazado el 27 de diciembre de 2001. Dicho emplazamiento fue expedido y diligenciado en la persona de *"Dr. Francisco De Torres Font, por sí y en representación legal de la Sociedad de Bienes Gananciales con la Sra. Iris Marie De Torres Highley."* ■

El 1 de febrero de 2002, el Dr. Torres Font presentó moción solicitando la nulidad de los emplazamientos. Alegó que *"[a]parte de que el supuesto emplazamiento identifica incorrectamente con quién el compareciente tiene constituida sociedad legal de gananciales, el mismo es improcedente porque ninguno de los ascendientes de las partes puede ser parte de su pleito de divorcio."* Alegó además, que conforme a los Artículos 142 y siguientes del Código Civil, la reclamación de alimentos se interpone a nombre de la persona con derecho a recibirlos, y en los casos en que procede puede ser proporcionada cuando recae sobre dos o más personas. También señaló, que el emplazamiento fue acompañado de una *"Moción Urgente en Solicitud de Expedición de Emplazamientos"* sometida por la señora Doeer, en lugar de haber sido acompañado de la demanda de alimentos. ■ El 13 de febrero de 2002, el TPI declaró no ha lugar la moción solicitando nulidad de emplazamiento.

Llamado el caso, el 3 de mayo de 2002, para vista final de rebaja de pensión alimentaria, la misma fue suspendida debido a que el Sr. De Torres Highley informó que había presentado querella contra la examinadora de pensiones alimentarias y contra el Juez Rosario Villanueva. Como resultado, la Oficial Examinadora de Pensiones, Lcda. Catherine Hoffman, se inhibió del caso.

El 6 de mayo de 2002, la señora Doeer presentó nuevamente moción de desacato. Alegó, en síntesis, que el Sr. De Torres Highley no estaba cumpliendo con el pago de la pensión y que la suma adeudada sobrepasaba los $5,000. ■ El Sr. De Torres Highley replicó y solicitó vista de pensión alimentaria. ■ En la vista celebrada el 19 de junio de 2002, el TPI no encontró al Sr. De Torres Highley incurso en desacato. Se indicó que tienen vista ante la Examinadora para el mes de septiembre. ■

Luego, el 27 de junio de 2002 la señora Doeer cursó a los peticionarios un aviso de producción de

documentos a efectuarse el 1 de agosto de 2002, y un pliego de interrogatorios. El 31 de julio de 2002, los peticionarios informaron que no habrían de producir la prueba que les fue requerida. El 2 de agosto de 2002, la Sra. Doeer solicitó al TPI que ordenara a los peticionarios descubrir la prueba solicitada y que les impusiera sanciones por obstaculizar los procesos ante el Tribunal.

El 6 de agosto de 2002, los peticionarios presentaron *"Moción en Oposición a Solicitud de Orden"* en la *que se negaron a contestar el interrogatorio cursado por la Sra. Doeer. Los peticionarios aceptaron tener "la capacidad económica para sufragar la diferencia entre lo que los padres proveen y las necesidades del menor, según éstas se determinen finalmente por la examinadora, por lo que consideraban innecesario el interrogatorio."* ▮

A tenor con lo anterior, el 6 de septiembre de 2002, el TPI emitió la siguiente *Orden*:

*"Procédase conforme establece la jurisprudencia Chévere Mouriño v. Levis,* **2000 JTS 175**. *Los abuelos paternos admiten su capacidad económica."*

Dos meses luego, el 13 de noviembre de 2002, el TPI emitió resolución en la cual acogió el informe de la Examinadora de Pensiones Alimentarias, Lcda. Martha C. Torres López, y modificó la pensión de $1,026 a $689.77 mensuales efectiva ese mismo día. ▮

A base de la anterior determinación del TPI, el 17 de marzo de 2003, la Sra. Doeer presentó moción de desacato en contra de los peticionarios. Alegó, que éstos no habían satisfecho la cantidad de $362 mensuales que les había sido impuesta de pensión alimentaria para cubrir la diferencia que el alimentante no podía pagar, por lo que adeudaban $3,077. También les reclamó $3,249.99 por concepto de los gastos escolares tales como uniformes escolares, *"mad science"*, materiales escolares, libros, campamento y uniforme de verano. ▮

El 26 de marzo de 2003, el TPI celebró vista a la cual comparecieron la promovente y el promovido con sus respectivas representaciones legales. No comparecieron los abuelos paternos ni su representación legal. El TPI ordenó que el informe de la procuradora de 8 de noviembre de 2002 fuera notificado a los abogados de las partes incluyendo al Lcdo. Peter Trías Grimes; ▮ y señaló vista de desacato para el 28 de abril de 2003. ▮

El 3 de abril de 2003, los peticionarios replicaron a la moción de desacato alegando que nunca fueron notificados del informe final de la Oficial Examinadora. Arguyeron además, que tampoco aceptaron asumir la diferencia entre la pensión alimentaria vigente y la pensión alimentaria recomendada, por lo que solicitaron una transcripción de la referida vista. ▮

A la vista celebrada el 28 de abril de 2003 comparecieron los abuelos paternos personalmente y representados por el Lcdo. Trías. Éste cuestionó la información contenida en el informe de la Examinadora que indica que los abuelos paternos estipularon la pensión alimentaria fijada en la vista ante la Examinadora. El Dr. De Torres Font manifestó además, que no era su obligación la manutención de su nieto, pues tanto su hijo como la madre del menor (Sra. Doeer) eran profesionales y estaban empleados, y que el menor debe vivir de acuerdo al estándar de los padres y no al de los abuelos. La representación legal de la Sra. Doeer expresó que los abuelos paternos fueron traídos al pleito porque el padre alegó que no tenía capacidad para pagar la pensión alimentaria. Luego de escuchar la grabación de la vista ante la Examinadora, el TPI concluyó que no hubo estipulación alguna en cuanto a la pensión. Por tanto, anunció que emitiría resolución *nunc pro tunc*, la cual notificaría a todas las partes. ▮

El 27 de febrero de 2004, el TPI emitió *Resolución y Orden Nunc Pro Tunc* en la cual, luego de hacer un recuento de los incidentes procesales pertinentes, ordenó a los peticionarios sufragar mensualmente en beneficio del nieto menor la suma de $698.73. Dispuso además, que debían cubrir anualmente la cantidad de $2,293 para

otros gastos del menor tales como uniformes escolares, "*mad science*", campamentos, uniformes de verano, entre otros. También determinó que la obligación alimentaria de los abuelos era retroactiva al momento en que la misma fue solicitada al tribunal, es decir, al 16 de diciembre de 2001. Finalmente, ordenó a las partes informar al TPI en el término de diez días el monto de la deuda retroactiva que debe ser satisfecha por abuelos paternos del menor, Dr. Francisco De Torres Font y Sra. Iris Highley. 

El 15 de marzo de 2004, la Sra. Doeer presentó moción informando al TPI que la deuda de los peticionarios ascendía a $26,443.44, sin incluir intereses. Los peticionarios se opusieron al cómputo retroactivo de la deuda alegando que el mismo hace caso omiso del pago de pensión provisional que el padre estaba sufragando.

Además, el 26 de abril de 2004, los peticionarios solicitaron la reconsideración de la *Resolución y Orden Nunc Pro Tunc* y señalamiento de vista. Alegaron que la referida resolución no puede surtir efecto ni obligación legal contra ellos por no existir una causa de acción en su contra. También alegaron, que no procedía incluirlos en este pleito por no haberse completado los trámites procesales contra el padre, quien es la parte obligada al pago de la pensión alimentaria, a quien aún no se le había fijado una pensión alimentaria permanente. Por último, alegaron que no se demostró mediante evidencia la falta de capacidad económica de ambos padres, para entonces poder invocar la obligación legal de los abuelos a pagar de forma subsidiaria la pensión alimentaria de su nieto.

El 27 de mayo de 2004, el TPI declaró no ha lugar la solicitud de los peticionarios.

No conforme con la determinación del TPI, el 6 de julio de 2004, los abuelos paternos presentaron ante este Tribunal el recurso de *certiorari* KLCE-2004-00900, al cual acompañaron *Moción en Auxilio de Jurisdicción*. Solicitaron que se dejara sin efecto la pensión alimentaria fijada a ellos mientras se resuelve el recurso presentado y la paralización de la vista ante el TPI, pautada para el 8 de julio de 2004. El 7 de julio de 2004, este Tribunal declaró no ha lugar la petición en Auxilio de Jurisdicción, y luego, el 27 de julio de 2004, denegó la expedición del auto de *certiorari* por prematuro. Ello, porque los peticionarios recurrieron de un no ha lugar de 27 de mayo de 2004, que el propio TPI dejó sin efecto mediante resolución emitida el 29 de junio de 2004, en la cual ordenó a Secretaría notificar a las partes el acta de la Oficial Examinadora y concedió 15 días a partir del recibo del acta para replicar a lo allí expuesto. En adición, el recurso se presentó mientras estaba pendiente una vista para resolver la controversia en cuanto a la cantidad retroactiva de pensión alegadamente adeudada.

El 8 de julio de 2004, el TPI celebró una vista sobre el estado procesal de la causa. En ésta, las partes tuvieron oportunidad de argumentar sus posiciones, en particular lo relacionado a la pensión alimentaria suplementaria impuesta a los abuelos paternos. Luego de escuchar tales planteamientos, el TPI paralizó todos los procedimientos relacionados con éstos.

No obstante, el 11 de mayo de 2005, el TPI declaró no ha lugar la solicitud de reconsideración de la *Resolución y Orden Nunc Pro Tunc* de 27 de febrero de 2004.

Inconformes con la determinación del TPI, oportunamente, el Dr. Francisco De Torres Font y su esposa Iris Highley presentaron el recurso que nos ocupa, señalando que:

"*ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA, EN VIOLACIÓN AL DEBIDO PROCESO DE LEY QUE ASISTE A LOS PETICIONARIOS AL:*

*1. Imponerle a los abuelos paternos el pago de una segunda pensión alimentaria suplementaria, sin haber hecho una determinación previa de que ninguno de los padres podía sufragar los alimentos de su hijo, y cuando surge del expediente como realidad indisputada que ambos padres sí trabajan y al padre del menor se*

*le fijó una pensión por las guías mandatorias de la Ley de Alimentos que cubre el 52.29% de los gastos de su hijo, adicional al 17.26% de su salario que se incluye como parte de la pensión total fijada.*

*2. Fijarles a los abuelos paternos el pago de una pensión suplementaria para su nieto, que se convierte en una segunda pensión a la que ya el padre paga, siendo dicha determinación improcedente y contraria a derecho, y por ende, nula.*

*3. No traer al proceso una parte indispensable que son los abuelos maternos, ya que de existir alguna obligación de alimentos en este caso de los abuelos, había que traer a los abuelos paternos y maternos, lo que no se hizo; ni presentar demanda o reclamación alguna contra los abuelos paternos, siendo traídos al pleito sumariamente, ausente además, acuerdo alguno por parte de los aquí peticionarios, sometiéndose a la jurisdicción del Tribunal y/o asumiendo responsabilidad por una obligación alimentaria que no le corresponde.*"

En cumplimiento de orden, la parte recurrida presentó alegato en oposición. Con el beneficio de los alegatos presentados, pasamos a resolver.

## II

### A. Alimentos de Menores.

Los casos relacionados con alimentos de menores están revestidos de un alto interés público, siendo su interés principal el bienestar del menor. *Argüello López v. Argüello García*, 155 D.P.R. ___ (2001), **2001 J.T.S. 127**, a la pág. 91; *Figueroa Robledo v. Rivera Rosa*, 149 D.P.R. 565, 572 (1999); *Ríos Rosario v. Vidal Ramos*, 134 D.P.R. 3, 7 (1993); *López v. Rodríguez*, 121 D.P.R. 23, 28 (1988); *Negrón Rivera y Bonilla Ex Parte*, 120 D.P.R. 61, 71 (1987).

La jurisprudencia ha reconocido que el derecho a reclamar alimentos, como parte del derecho a la vida, es uno de profundas raíces constitucionales. Art. II, Sec. 7, Const. E.L.A., L.P.R.A., Tomo I; *Figueroa Robledo v. Rivera Rosa, supra*, a la pág. 572; *Rodríguez Avilés v. Rodríguez Beruff*, 117 D.P.R. 616, 621 (1986). Este derecho fundamental se acentúa cuando están envueltos alimentos de menores y forma parte del poder de *parens patriae* del Estado. *González v. Suárez Milán*, 131 D.P.R. 296, 301 (1992); *Figueroa Robledo v. Rivera Rosa, supra*, a la pág. 572.

Como parte de la política pública que impera en Puerto Rico, los padres o las personas legalmente responsables deben contribuir, en la medida en que sus recursos lo permitan, a la manutención y bienestar de sus hijos. Art. 3, Sec. III de la Ley Núm. 5 de 30 de diciembre de 1986, conocida como Ley Orgánica de la Administración para el Sustento de Menores, 8 L.P.R.A. sec. 502.

La responsabilidad económica de mantener a los hijos es incuestionablemente una parte esencial e integral de las responsabilidades jurídicas de los padres. Tal obligación es intransmisible e indelegable y la misma es inherente a la patria potestad que está arraigada en profundas consideraciones de base moral, tales como el amor, auxilio y la solidaridad familiar. Por lo tanto, la responsabilidad económica de mantener a los hijos es considerada como una obligación primordial cuyo cumplimiento debe ser exigido con el mayor rigor. *Soto Cabral v. E.L.A.*, 138 D.P.R. 298, 313 (1995); *Rodríguez Sanabria v. Soler Vargas*, 135 D.P.R. 779, 785-786 (1994); *Ríos Rosario v. Vidal Ramos, supra*, a la pág. 7.

En nuestra jurisdicción, el Art. 142 y siguientes del Código Civil, 31 L.P.R.A. sec. 561 y siguientes, y la Ley Orgánica de la Administración para el Sustento de Menores, sec. 501 y siguientes, son las fuentes de la obligación alimentaria. De ahí que la obligación que tienen los padres de alimentar a sus hijos es una obligación primordial y que su cumplimiento se exige con el mayor rigor. *Soto Cabral v. E.L.A., supra*, a la pág. 322. Sin

embargo, el fundamento medular de todas estas leyes es la relación paterno-filial. *Argüello López v. Argüello García, supra,* a la pág. 91. Al respecto, se ha dicho que *"el derecho de los menores a reclamar alimentos, la obligación de los padres de proveerlos y la interpretación de los tribunales para concederlos, deben estar enmarcados en la relación paterno-filial legalmente establecida; no supeditada a uno u otro artículo del Código Civil".* *Id,* a la pág. 91; *Chévere v. Levis,* 150 D.P.R. 519, 539 (2000).

El Art. 142 del Código Civil, 31 L.P.R.A. sec. 561, establece que se entenderá por alimento todo aquello que es indispensable para el sustento, habitación, vestido y asistencia médica, según la disposición social de la familia. Además, señala que los alimentos comprenden también la educación e instrucción del alimentista, cuando es menor de edad. Este artículo incluye tanto las necesidades físicas como intelectuales del alimentista. *Guadalupe Viera v. Morell,* 115 D.P.R. 4, 14 (1983).

Al momento de determinar la cuantía de la obligación alimentaria, hay que tomar en cuenta que en los casos en que hay más de un alimentante procede repartir entre ellos el pago de la pensión en cantidad proporcionada a su caudal respectivo. Art. 145, *supra.* Respecto a la cuantía de los alimentos que un tribunal deberá conceder, el Art. 146, *supra,* 31 L.P.R.A. sec. 565, por su parte, establece que la cuantía de los alimentos será proporcionada a los recursos del que los da y a las necesidades del que los recibe, y se reducirán o aumentarán en proporción a los recursos del primero y a las necesidades del segundo. La determinación sobre lo que es indispensable dependerá tanto de las circunstancias del menor como los recursos de los alimentantes, proporcionado al caudal respectivo de cada padre. *Argüello López v. Argüello García, supra,* a la pág. 92.

Para determinar la capacidad económica de cada alimentante, el tribunal de instancia no está limitado a considerar sólo la evidencia testifical o documental sobre los ingresos. *"Puede, al fijar la cuantía de la pensión, considerar aspectos tales como el estilo de vida que lleva el alimentante, su capacidad para generar ingresos, la naturaleza y cantidad de las propiedades con que cuenta, la naturaleza de su empleo o profesión y sus otras fuentes de ingreso."* *Id; López v. Rodríguez,* 121 D.P.R. 23, 33 (1988).

## B. Responsabilidad Alimentaria de los Abuelos.

La obligación de prestar alimentos a los descendientes menores de edad está consagrada en cuanto a los padres en los Arts. 118 y 153 del Código Civil, 31 L.P.R.A. secs. 466 y 601; y en cuanto a los demás ascendientes, en los Arts. 143 y 144, 31 L.P.R.A. secs. 562 y 563, referente a los alimentos entre parientes. De dichos artículos surge la obligación legal de los abuelos de alimentar a sus nietos. El Art. 143, *supra,* dispone que los cónyuges, los ascendientes y descendientes, y el adoptante y el adoptado y sus descendientes, están obligados recíprocamente a suministrarse alimentos en toda la extensión que señala el Art. 142, *supra.* Mientras que el Art. 144, *supra,* establece el orden en que debe ser realizada la reclamación de alimentos cuando son dos o más los obligados a prestar alimentos.

La responsabilidad de los abuelos de prestar alimentos a sus nietos es de naturaleza subsidiaria. La obligación de los abuelos en cuanto al pago de pensión alimentaria *"surge cuando los padres no pueden proveerle a sus hijos los alimentos, ya sea porque están física o mentalmente incapacitados para hacerlo o porque no cuentan con suficientes recursos económicos para cumplir con su obligación".* *Colón Vázquez, Ex-parte,* 126 D.P.R. 337, 347 (1990); *Piñero Crespo v. Gordillo Gil,* 122 D.P.R. 246, 252-253 (1988). Por tanto, es necesario acreditar que los llamados preferentemente a prestar alimentos carecen de medios para sufragarlos. Cuando se trata de padres divorciados, debe justificarse que ambos están impedidos de cumplir cabalmente con su obligación. *Vega v. Vega Oliver,* 85 D.P.R. 675, 682 (1962).

En *Vega v. Vega, supra,* la madre cubría una parte limitada de la pensión alimentaria de la menor, mientras que la sociedad de gananciales compuesta por ella y su segundo esposo prestaba otra parte de la pensión alimentaria, aunque no era suficiente para cubrir todos los gastos indispensables de la menor. También surge

que el padre tampoco podía cubrir totalmente los gastos indispensables de la menor. Por ello, la obligación alimentaria del abuelo paterno hacia su nieta era exigible.

La imposición de la pensión alimentaria que tratamos presupone determinados factores que dependen de la prueba, y se activa únicamente en ausencia de padres alimentantes que suplan las necesidades alimentarias de sus hijos menores de edad o cuando los padres aporten a los alimentos de sus hijos, pero en forma insuficiente para cubrir todas las necesidades alimentarias de los hijos menores. S. Torres Peralta, *La Ley Especial de Sustento de Menores de 1994 y el Derecho de Alimentos en Puerto Rico,* San Juan, Ed. Publicaciones STP, Inc, 1997, pág. 1.47. Todo esto parte de la perspectiva de que tanto el padre como la madre tienen el deber de alimentar a sus hijos menores con arreglo a su fortuna. Art. 153, *supra.*

Ello significa, que para poder establecer la responsabilidad alimentaria de los abuelos hay que producir prueba que establezca que ambos padres carecen de medios suficientes para sufragar las necesidades alimentarias del menor, o la que tienen es limitada e insuficiente para cubrir adecuadamente los alimentos que necesita el menor. S. Torres Peralta, *supra,* pág. 1.49.

La responsabilidad alimentaria de los abuelos, además de subsidiaria, es mancomunada, ya que cada abuelo sólo será responsable por una porción de la deuda en proporción a su caudal. *Piñero Crespo v. Gordillo Gil, supra,* a la pág. 254. Sobre este asunto, el Art. 145, *supra,* dispone la regla general de que cuando recaiga sobre dos o más personas la obligación de dar alimentos, se repartirá entre ellos el pago de la pensión en cantidad proporcionada a su caudal respectivo. Por otra parte, el Art. 146, *supra,* dispone que la cuantía de los alimentos será proporcional a los recursos del que los da y a las necesidades del que los recibe, y serán reducidos o aumentados en proporción a los recursos del primero y a las necesidades del segundo.

Sin embargo, existen circunstancias que permiten variar la regla general de la responsabilidad alimentaria mancomunada de los abuelos, esto es, cuando existe una situación de urgente necesidad o circunstancias especiales. En tal caso, el tribunal puede obligar a que sólo uno de los abuelos la preste provisionalmente. En estas situaciones, la obligación alimentaria se torna en responsabilidad solidaria, ello sin perjuicio de su derecho a reclamar de los demás obligados la parte que les corresponda. S. Torres Peralta, *Op. cit.,* págs. 1.51-1.52.

Así también, el Tribunal Supremo expresó en *Piñero Crespo v. Gordillo Gil, supra*: "*Cuando se dan las circunstancias señaladas en el Art. 145, a los efectos de que existe una situación de urgente necesidad o circunstancias especiales, el tribunal puede ordenar que sólo uno de los obligados la preste. La doctrina ha reconocido que en estas situaciones la obligación alimentaria se torna en solidaria. Puig Peña, Compendio de Derecho Civil Español. Vol. V, pág. 498; Lacruz Berdejo, Derecho de Familia, T. II, pág. 223. En tales circunstancias la reclamación puede dirigirse contra cualquiera de los obligados por la totalidad de la deuda. Castán Tobeñas. Derecho Civil Español, Común y Foral, Madrid, Ed. Reus, 1966, T.V, Vol.2, pág. 264. Corresponde al tribunal determinar en cada caso lo que constituye una situación de urgente necesidad o circunstancias especiales.*" *Id,* a la pág. 255.

## C. Partes Indispensables en una Reclamación Alimentaria.

La Regla 16.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, dispone que las personas que tuvieren un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandadas según corresponda. Cuando una persona que deba unirse como demandante rehusare hacerlo, podrá unirse como demandada.

Por su parte, la Regla 16.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, establece que el tribunal podrá ordenar la comparecencia de aquellas personas sujetas a su jurisdicción, que a pesar de no ser partes indispensables, deben ser acumuladas si se ha de conceder un remedio completo a las personas que ya sean

partes en el pleito.

La parte indispensable es aquélla que tiene tal interés en la controversia que no puede dictarse una sentencia sin que sus derechos se vean afectados. Por ello, una sentencia dictada sin incluir a una parte indispensable en el pleito no sería válida. *Fred y otros v. E.L.A.,* 150 D.P.R. 599, 609 (2000); *Unisys v. Ramallo Brothers,* 128 D.P.R. 842, 859 (1991).

El Tribunal Supremo ha señalado que el propósito de la Regla 16.1 de Procedimiento Civil, *supra,* es proteger a las personas ausentes de los posibles efectos perjudiciales de la resolución del caso sin su presencia, y así evitar multiplicidad de pleitos mediante un remedio efectivo. *Sánchez v. Sánchez,* 154 D.P.R. 645, 680 (2001); *Fred Reyes v. E.L.A., supra,* a la pág. 609; *Metropolitan Marble Corp. v. Pichardo,* 145 D.P.R. 607 (1998); *Unysis v. Ramallo Brothers, supra,* a la pág. 859. Como sus derechos e intereses podrían quedar afectados al momento de emitir la sentencia o resolución por no estar presente en el litigio, esa parte indispensable tiene que ser traída al pleito. *Cepeda Torres v. García Ortiz,* 132 D.P.R. 698, 704 (1993); *Fuentes v. Tribl. de Distrito,* 73 D.P.R. 959, 981 (1952).

El excluir a una parte indispensable es una situación tan crítica que el asunto puede plantearse en apelación por primera vez o aun suscitarse por el tribunal *sua sponte. Martínez Soria v. Tribunal Superior,* 139 D.P.R. 257 (1995).

En *Cepeda Torres v. García Ortiz, supra,* se solicitó un aumento de pensión alimentaria y desacato por incumplimiento en la satisfacción de la pensión alimentaria a un excónyuge. Este estaba nuevamente casado bajo el régimen económico de separación de bienes, pero la nueva esposa no fue demandada. El Tribunal Supremo resolvió que la esposa del demandado era parte indispensable por lo que debía ser emplazada y traída al pleito.

Para adquirir jurisdicción sobre los abuelos, la reclamación podrá instarse: 1) dentro del mismo caso de divorcio o de. alimentos radicados contra el padre; 2) en procedimiento separado o independiente; 3) puede radicarse directamente contra los abuelos, sin tener que reclamarle a los padres, pero es necesario hacer alegaciones expresas de que los padres carecen de la capacidad económica necesaria para cumplir su obligación alimentaria primaria hacia sus hijos; y 4) si hay una sociedad de gananciales por su siguiente matrimonio del cónyuge alimentante, el otro cónyuge deberá ser emplazado con oportunidad de su día en corte. S. Torres Peralta, *supra,* pág. 1.53.

Por otra parte, la regla de la mancomunidad que establece el Art. 145, requiere que el alimentista demande a los cuatro abuelos y que se diligencie el emplazamiento en cada uno de ellos a fin de adquirir jurisdicción sobre sus respectivas personas. Como regla general, el abuelo que no sea traído a corte no se le podrá imponer responsabilidad alimentaria. *Id,* pág. 1.50.

Una vez el tribunal determine que hay varios obligados y que pueden contribuir a la obligación de proveer alimentos, el pago de la deuda deberá repartirse necesariamente entre los obligados. Para ello, el demandado deberá colocar al tribunal en condiciones de poder adjudicar la responsabilidad de los demás presuntos obligados, incluyéndolos en el pleito mediante los mecanismos procesales apropiados. El demandado podrá, además, levantar al asunto como una defensa afirmativa. *Piñero Crespo v. Gordillo Gil, supra,* a las págs. 256-257.

Si los abuelos demandados entienden que se les está reclamando una suma en exceso a lo que debe ser su obligación, deberán entonces reclamar a los demás obligados mediante demanda contra tercero o, si ya ha recaído sentencia, recurriendo en alzada o mediante los remedios postsentencia que proveen las Reglas de Procedimiento Civil. *Piñero Crespo v. Gordillo Gil, supra,* a la pág. 256.

Por otra parte, el Tribunal Supremo ha manifestado que en situaciones donde se pretende traer a los otros

abuelos al pleito de alimentos, los tribunales deben tener presente siempre la norma de que los procedimientos de alimentos deben tramitarse con la debida rapidez. *Piñero Crespo v. Gordillo Gil, supra*, a la pág. 257; *Rodríguez Avilés v. Rodríguez Beruff*, 117 D.P.R. 616 (1986); *Quiñones v. Jiménez Conde*, 117 D.P.R. 1 (1986); *Martínez v. Rivera Hernández*, 116 D.P.R. 164 (1985).

Es decir, aunque prevalece como regla general la obligación alimentaria mancomunada de los abuelos, siempre que el menor tenga la necesidad de alimentos, debe considerarse que se trata de situación especial de urgente necesidad y de circunstancias que ameritan la más pronta atención. S. Torres Peralta, Op. cit., pág. 1.54; *Piñero Crespo v. Gordillo Gil, supra*; *Vega v. Vega Oliver*, 85 D.P.R. 675 (1962).

## III

Por estar relacionados, discutiremos en conjunto los errores señalados.

Conforme surge de la resolución recurrida, el TPI determinó reducir al padre del menor la pensión alimentaria de $1,026.00 mensuales a $689.77 mensuales. Esta cantidad incluye: a) $243.66 para gastos mínimos; b) $188.86 para vivienda; c) $15.25 para matrícula del colegio; y d) $122.18 para cuido.

Por otra parte, impuso a los abuelos paternos satisfacer la cantidad de $336.23 mensuales (cantidad que alegadamente no puede satisfacer el padre del menor), como pensión alimentaria suplementaria. En adición, los abuelos paternos deberán pagar la cantidad de $362.50 mensuales correspondientes al resto de los gastos mensuales del menor y gastos anuales adicionales que ascienden a $2,293.75.

De acuerdo a la norma establecida en *Vega v. Vega, supra*, la responsabilidad de los abuelos en cuanto al pago de alimentos a sus nietos es subsidiaria. Por ello, es necesario acreditar que los padres carecen de medios para sufragar los alimentos y justificar que ambos están impedidos de cumplir con su obligación, y luego, acreditar que los abuelos cuentan con suficientes recursos para asumir dicha obligación.

Por lo tanto, aunque en la causa que nos ocupa medió prueba ante el TPI de que el padre no podía sufragar totalmente los gastos del menor, con los *"ingresos que recibía"*, según declarados en la planilla informativa, ciertamente, al llegar a sus conclusiones dicho foro no tomó en consideración que el padre escogió en su trabajo una forma de remuneración en la cual la mayor parte de sus ingresos se desvían a su plan de retiro. Sin estudiar con detenimiento, y en todo detalle, la fórmula utilizada para determinar la parte líquida de ingresos que recibe el padre alimentante mensualmente, versus los ingresos que en efecto devenga, el TPI no podía concluir que el padre alimentante no tiene la capacidad económica suficiente para cumplir con sus obligaciones alimentarias. Luego de fundamentar su determinación al respecto, de ser ese el caso, entonces procede que el TPI le imponga responsabilidad a los abuelos paternos, quienes aceptaron tener capacidad económica para ello.

No obstante, de ser necesario fijar responsabilidad alimentaria a los abuelos, éstos tienen derecho al debido proceso de ley. En estos casos se debe acompañar el emplazamiento con alegaciones específicas, y se les debe permitir el descubrimiento de prueba para que determinen la necesidad de traer al pleito a los abuelos maternos. Además, ello permitiría determinar en qué proporción los alimentantes deberán responder por los alimentos del menor. *Piñero Crespo v. Gordillo Gil, supra*.

Se cometieron los errores señalados.

## IV

Por los fundamentos anteriormente expuestos, se revoca la resolución recurrida y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos conforme a lo aquí resuelto.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones

**ESCOLIOS 2006 DTA 71**

**1.** Además de las numerosas vistas, tanto ante el TPI como ante la Examinadora de Pensiones, ha tenido cambio de Examinadoras, cambio de Jueces y cambio de las representaciones legales del recurrido y de los abuelos paternos.

**2.** Véase págs. 37 y 38 del apéndice del recurso.

**3.** Véase pág. 30 del apéndice del recurso.

**4.** Véase, pág. 40 del apéndice del recurso.

**5.** Véase, págs. 48-50 del apéndice del recurso.

**6.** Véase, págs. 52-57 del apéndice del recurso.

**7.** Véase, pág. 60 del apéndice del recurso.

**8.** Véase, pág. 61 del apéndice del recurso.

**9.** Véase, págs. 64 y 65 del apéndice del recurso.

**10.** Véase, pág. 66 del apéndice del recurso.

**11.** Véase págs. 69 y 70 del apéndice del recurso.

**12.** Véase, págs. 69-70 del apéndice del recurso.

**13.** Véase, págs. 74-76 del apéndice del recurso.

**14.** Véase, págs. 82-85 del apéndice del recurso.

**15.** Véase, págs. 86-87 del apéndice del recurso.

**16.** Véase, págs. 123 y 124 del apéndice del recurso.

**17.** Véase, pág. 130 del apéndice del recurso.

**18.** Véase, págs. 131-133 del apéndice del recurso.

**19.** Los abuelos paternos habían sido representados en incidentes anteriores por el Lcdo. Peter Trías Grimes.

**20.** Véase, pág. 145 del apéndice del recurso.

**21.** Véase, pág. 157 del apéndice del recurso.

**22.** Véase, págs. 159 y 160 del apéndice del recurso.

**23.** Véase, págs. 7-11 del apéndice del recurso.

**24.** Panel integrado por su presidente, Juez Arbona Lago, la Juez Feliciano Acevedo y el Juez Urgell Cuebas.